487 A.2d 802

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Thad McNEIL, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 25, 1984.

Decided Feb. 8, 1985.

608

Eric B. Henson, Deputy Dist. Atty., Marianne Cox, Asst. Dist. Atty., Philadelphia, for appellant.

Burton A. Rose, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN,* Justice.

On January 29, 1980, Thad McNeil, appellee, was convicted by a jury in the Court of Common Pleas of Philadelphia County of rape, assault, involuntary deviate sexual intercourse, unlawful restraint and indecent assault. The evidence introduced at trial discloses the following facts and circumstances underlying those convictions.

At approximately 12:30 A.M. on May 21, 1979, Mrs. Angeline Bennett, a nurse, was returning home from work and was waiting for a bus at 29th Street and Lehigh Avenue in Philadelphia. Appellee pulled up to the bus stop in his car, spoke to Mrs. Bennett and offered to drive her to

---

* This case was reassigned to this writer on December 5, 1984.

her home. She accepted the offer but instead of taking her home, appellee pulled into a secluded parking lot nearby where he assaulted and raped Mrs. Bennett.

When she was finally released, the distraught victim stopped a Philadelphia police officer who had observed her enter appellee's car approximately one hour earlier. Her face and eye were swollen, her nurse's uniform was bloodied and she was in tears. Mrs. Bennett gave a description of her assailant and his vehicle to the police and gave them a piece of the car's ripped upholstery which she had taken and concealed.

Appellee was arrested on June 4, 1979 for the rape of another woman, Mrs. Sabrina Baker. The events alleged by Mrs. Baker bore a striking similarity to those of the instant case. Because of that similarity, Mrs. Bennett was contacted by detectives and identified appellee as her attacker at a police lineup. A search of appellee's vehicle, pursuant to a warrant, disclosed torn upholstery and an octagon shaped earring that Mrs. Bennett told police may have been lost during the attack.

The defense was denial. Testifying in his own defense, appellee was asked by defense counsel "Prior to May 22, 1979 [the rape occurred on May 21, 1979], have you ever seen Angeline Bennett...." Appellee responded "No, sir". Defense counsel attacked the victim's credibility and her identification of appellee, focusing on a discrepancy between the victim's description of the color of appellee's car and its actual color. Counsel also suggested to the jury that Mrs. Bennett had taken a ride from a male acquaintance who was to have taken her home the evening of the rape and had consensual intercourse with him that had gotten out of hand, at which point she reported a rape. Counsel further argued to the jury that, having reported a rape, Mrs. Bennett felt pressure at the police lineup to identify someone as her attacker and that someone happened to be appellee. The jury rejected counsel's suggestion and convicted appellee of the charges as noted.

On July 8, 1980, a hearing was held before the trial court at which appellee's post trial motions were argued and denied. A sentencing hearing was then conducted. At this hearing, appellee informed the court that "I feel as though I was taken advantage of and that I didn't have a fair trial .... because ... my attorney, he stopped me from telling the truth, he stopped me from saying things that could have helped me." Notes of Testimony (N.T.), July 8, 1980 at 35–36, R. 546a. Appellee explained to the court that he had lied at his trial in denying that he knew Mrs. Bennett, that in fact he and Mrs. Bennett had been lovers but their relationship had soured because he "lied to her" and "played games" with her. Appellee further claimed at this hearing that Mrs. Bennett and Mrs. Sabrina Baker had conspired against him to separately accuse him of rape. *Id.* at 38–39, R. 548a–549a.

Mrs. Baker had filed charges against appellee, accusing him of raping her on April 29, 1979.[1] Mrs. Baker testified, at a trial conducted subsequent to the instant trial proceedings, that appellee had forced her at knife-point into his car, driven to the parking lot near 29th Street and Lehigh Avenue and brutally and repeatedly raped her. Mrs. Baker's common law husband had kept the parking lot under surveillance since the incident and on June 4, 1979, spotted appellee there in his vehicle with another woman. Appellee's license number was reported to detectives which led to his arrest for the alleged rape of Mrs. Baker, and subsequently, for the rape of Mrs. Bennett. Appellee presented a successful consent defense in the Sabrina Baker case and the jury acquitted him on all charges.[2]

1. The Commonwealth filed a motion to consolidate the instant case and the Sabrina Baker case, arguing that the cases were markedly similar and established a modus operandi or "signature" of the appellee. The motion for consolidation was denied by the trial court.

2. Appellee was also a defendant in two other similar cases wherein the complainant in each case alleged that appellee had abducted her from a bus stop, driven her to a secluded parking lot, and raped her. Appellee was acquitted in both of these cases after testifying in each that he knew the woman, had dated her and had jilted her for another woman. *Commonwealth v. Thad McNeil,* Phil.C.P., CC. 78–02–853–857

At his sentencing hearing in the instant case, appellee claimed that defense counsel prevented him from telling the truth about his newfound "victims conspiracy/consent" defense and that he followed counsel's advice because he was "scared to death". N.T. July 8, 1980 at 46, R. 556a. Appellee further claimed that there were several female witnesses who could corroborate this defense. *Id.* at 37, R. 547a and 41, R. 551a. The court also heard hearsay testimony by appellee's mother and a minister to the effect that appellee had stated to them that he knew and dated Mrs. Bennett and that he had witnesses to prove it.

Defense counsel informed the court that appellee had chosen to testify and had chosen what to say after the two had evaluated and discussed the case. Nevertheless, despite initial skepticism as to appellee's newfound defense and his recanting testimony alleging his own perjury at trial,[3] the court took the matter under advisement, appointed new counsel, and scheduled a subsequent hearing to determine whether trial counsel was ineffective in failing to pursue the newfound defense and/or for failing to interview witnesses.

At a hearing convened on January 22, 1981, appellee produced only one witness, Mr. Russell Gore, who testified that he had twice seen appellee with a woman whom he later identified as Mrs. Bennett. Mr. Gore had been present at appellee's entire trial and had spoken with defense counsel; however, defense counsel never interviewed Mr. Gore. Appellee did not introduce, at this hearing, any of the female witnesses he previously mentioned as being able to corroborate his claims.

*and Commonwealth v. Thad McNeil,* Phil.C.P., CC. 77–10–1877–1882. Additionally, appellee had been convicted of unlawful restraint and reckless endangering for an incident wherein he jumped into a car parked outside of a fast food restaurant and, with a woman appellee did not know in the passenger seat, drove the car away. The woman escaped. N.T., July 8, 1980 at 11–13, R. 521a–523a.

3. After appellee stated that his attorney "was supposed to help me, Your Honor. He betrayed me," the court stated: "All right. I've heard enough. Everybody has betrayed you, McNeil. The women, the lawyer, everybody." N.T. July 8, 1980 at 47, R. 557a.

A third hearing was held on February 10, 1981 at which trial counsel testified. At this hearing, counsel appeared to be confused as to the defenses that were to have been presented in the Baker and Bennett cases. (Counsel had also represented appellee in two prior rape cases of a similar nature as well, resulting in acquittals. *See* note 2 *supra.*) He stated that he knew consent was to be a defense in one of the cases, and denial in the other, but he was not now sure which. However, a review of counsel's presentation in the instant trial proceedings discloses a coherent and consistent defense of denial. Counsel also conceded that he had not interviewed Gore at any time. Counsel reiterated, however, that he did not tell appellee how to testify. N.T. February 10, 1981 at 6, R. 591a. At this hearing, the Commonwealth attempted to discern the basis defense counsel had for pursuing the strategy actually chosen in the instant case and for not pursuing the "victims conspiracy/consent" defense, but the court sustained newly appointed counsel's objection to this inquiry.

Based upon the foregoing, the trial court granted appellee a new trial, holding that "trial counsel's failure to interview a potentially valuable witness, who could have aided in asserting a consent defense deprived the defendant, Thad McNeil, of his state and federally protected constitutional rights to effective assistance of counsel." Slip opinion at 16. On the Commonwealth's appeal, the Superior Court affirmed without opinion. 316 Pa.Super. 596, 463 A.2d 41 (1983). This Court granted the Commonwealth's petition for allowance of appeal and now reverse.

 This Court recently reiterated the appellate standards for reviewing claims of ineffective assistance of counsel; in *Commonwealth v. Anderson*, 501 Pa. 275, 286, 461 A.2d 208, 213 (1983) we stated:

We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967):

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular

course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.

The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

Moreover, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498 (1980). It is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687, 696 (1977).

Additionally, because counsel's stewardship of the trial is presumptively effective, the burden of establishing counsel's ineffectiveness rests upon the defendant. *Commonwealth v. Miller*, 494 Pa. 229, 233, 431 A.2d 233 (1981); *Commonwealth ex rel. Washington v. Maroney, supra* at 427 Pa. 608, 235 A.2d 349. With these standards to guide us, it is quite clear that the lower courts have erred in finding that appellee's trial counsel was ineffective.

To place our analysis of the ineffectiveness claim in perspective, we must examine the strategy that appellee asserts should have been pursued by his attorney. Following appellee's conviction in the instant case, but prior to sentencing, he was acquitted in the separate prosecution for the alleged rape of Mrs. Sabrina Baker, having successfully presented a consent defense. At the sentencing hearing in the instant case, appellee first propounded his "victims conspiracy/consent" theory. Defense counsel had failed to interview Russell Gore, who would have testified that he had seen appellee with Mrs. Bennett, although counsel knew of Gore's existence and availability. Based upon this "failure to interview a *potentially* valuable witness," the trial court held that appellee had been deprived "of his state

and federally protected constitutional rights to effective assistance of counsel." In so holding, the trial court has improperly decided appellee's ineffectiveness claim in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332 (1981).

It is undoubtedly true that a defense attorney's failure to investigate potentially meritorious defenses or failure to interview witnesses whose testimony could prove beneficial and exculpatory can constitute ineffective assistance of counsel if no reasonable basis exists for counsel's failure. *E.g., Commonwealth v. Mabie,* 467 Pa. 464, 359 A.2d 369 (1976). However, the value of a particular defense or witness' testimony is not judged abstractly in the vacuum of what might have been but in the reality of what is; accordingly, the defendant must sustain his burden of proving how the "road not taken" or the testimony of the uninterviewed witness would have been beneficial under the facts and circumstances of his case. *Commonwealth v. Anderson, supra,* 501 Pa. 287–288 at 461 A.2d 214; *Commonwealth v. Leonard,* 499 Pa. 357, 453 A.2d 587 (1982); *Commonwealth v. McKenna,* 498 Pa. 416, 446 A.2d 1274 (1982).

Exposed to the light of reality, appellee's claim of ineffective assistance of counsel evaporates. The critical factor is that the newfound "victims conspiracy/consent" defense, and Mr. Gore's testimony to support that defense, would not have been beneficial because it *would have utterly and disastrously contradicted appellee's trial testimony that he did not know the victim.*

The record demonstrates that appellee's testimony at trial (denying that he knew the victim) was knowing, intelligent and voluntary and was in furtherance of the deliberate trial strategy chosen by himself and counsel. Counsel testified that he did not tell appellee how to testify at trial, N.T. February 10, 1981 at 6, R. 591a, and informed the court that both he and appellee had input but the "ultimate decision" on how to testify was appellee's. N.T. July 8, 1980 at 46, R. 556a. Appellee, however, stated that counsel had "stopped him" from telling the truth. When

asked by the court "in what way were you not allowed to defend yourself?", appellee replied:

> Well, see, [defense counsel] informed me if I tell the truth the jury were to find out about the other case, and he said that would make it look bad for me.

N.T. July 10, 1980 at 36, R. 546a. Such assertions as to why appellee chose to render perjured testimony (if indeed it was his *trial* testimony that was perjured and not his recanting testimony at the *sentencing hearing*[4]) fall far short of the level of overbearing or coercion by counsel that could conceivably render the client's decision to so testify involuntary. Moreover, there is no doubt that appellee's decision was knowing and intelligent. Appellee was a combat veteran of the criminal justice system, having been a defendant in three prior criminal prosecutions wherein he

---

4. Although the trial court chose to believe appellee's testimony at the sentencing hearing, we note that recantation testimony is inherently and notoriously unreliable evidence upon which to predicate the granting of a new trial. This Court has frequently stated there is no less reliable form of proof, especially where the recanting testimony involves an admission of perjury. *See, e.g., Commonwealth v. Lee,* 478 Pa. 70, 385 A.2d 1317 (1978); *Commonwealth v. Gaddy,* 492 Pa. 434, 424 A.2d 1268 (1981); *Commonwealth v. Sanabria,* 478 Pa. 22, 385 A.2d 1292 (1978). The unreliability of recanting testimony is magnified where, as here, the recanting witness was the defendant in a criminal prosecution who has perverted the truth determining process by offering perjured testimony in his defense in an unsuccessful attempt to gain acquittal. The trial court completely ignored the evidentiary standards and cautionary admonitions contained in the above cases and placed inordinate reliance and weight upon appellee's recantation testimony and the "corroborating" testimony offered in support of his "victims conspiracy/consent" defense.

The inordinate and inappropriate reliance given to appellee's recanting testimony and the "corroborating" testimony is illustrated by the trial court's discussion of the testimony rendered by appellee's mother and the inferences drawn therefrom. The trial court stated that "[d]uring the sentencing hearing ... McNeil and his mother gave sworn testimony to this Court that McNeil and Bennett had been lovers...." Slip opinion at 4, R. 8a. This statement is utterly without factual foundation in the record. Appellee's mother merely rendered hearsay testimony that *her son had told her he knew Mrs. Bennett.* Moreover, it is curious that the court attached any importance whatsoever to the fact that appellee's testimony at his sentencing hearing was *sworn,* since he stood before the court and admitted that his *sworn* testimony at trial was perjured.

was represented by this same privately retained attorney. Moreover, appellee displayed his savvy and understanding of the criminal justice system when he took over his own defense in mid-trial in the Sabrina Baker case and secured an acquittal. Under these circumstances, it is obvious that appellee's testimony at trial was voluntary, knowing and intelligent.[5]

Having freely and deliberately chosen to offer testimony which he now asserts was false, appellee stands before this Court and attempts to reap a windfall new trial on account of his own perjury. The criminal justice system cannot and will not tolerate such an obvious and flagrant affront to the integrity of the truth determining process thinly disguised under the rubric of "ineffective assistance." As we stated in *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984), to "hold otherwise would create a situation wherein

---

5. Indeed, the trial court recognized that appellee's testimony at trial was deliberate and voluntary. At the sentencing hearing, the following exchange took place:

THE COURT: Did [Mr. McNeil] choose what he was going to do or not, Mr. Watson?

MR. WATSON [Defense Counsel]: Yes, ma'am.

THE COURT: You gave him a choice?

MR. WATSON: I might point out, just for the record, so we have it clear, so I won't have any lapses of memory later down the line: Mr. McNeill did wish to testify. He did testify.

Now—and the point is, which way would he want to testify? I had my input and he had his input. I evaluated and, of course, after all the testimony was in, of course, so it's just a question of which way things would want to be, and evaluate the testimony as it came about.

The ultimate decision, of course, Your Honor, was Mr. McNeil's. I'm sitting over here, he's sitting in the witness stand.

THE COURT: *He could have told. Nobody put a muzzle on him. He could have said anything he wanted to say.*

THE DEFENDANT: I was listening to my attorney. I was scared to death, Your Honor.

THE COURT: *You've been through how many trials by this point?*

MR. MYERS: *This was his fourth.*

THE COURT: Four trials.

THE DEFENDANT: Why did he stop me from telling?

THE COURT: *He didn't stop you. He gave you a suggestion and you made a choice. You were on the stand. You could have said anything you wanted to to that jury.*

N.T. July 8, 1980 at 45–46, R. 55a–556a. (emphasis added).

a defendant, by design, could build into his case ineffective assistance of counsel claims, thus guaranteeing himself a basis for a new trial if the verdict were adverse to him." 506 Pa. 251–252, 484 A.2d at 1377.[6]

■ Accordingly, there is no arguable merit to the strategy which appellee asserts should have been pursued by counsel because the "victims conspiracy/consent" defense was radically opposed to appellee's deliberate trial testimony. Counsel will not be deemed ineffective for failing to assert a defense that would not have been beneficial nor for failing to interview witnesses whose testimony would not have been helpful. *Commonwealth v. Anderson, supra; Commonwealth v. Leonard, supra; Commonwealth v. McKenna, supra.*

Furthermore, the trial court focused only on the arguable merit prong of the ineffectiveness standard and failed to consider whether counsel had some reasonable basis, in foregoing the "victims conspiracy/consent" defense, that was designed to effectuate his client's interests. The reasonable basis for defense counsel's tactics are forcefully apparent on the record. At the time of the instant trial, appellee's prosecution for the alleged rape of Mrs. Baker had not yet begun. Appellee's "victims conspiracy/consent" defense would have necessitated placing in front of the jury the fact that appellee had been charged as a rapist in another remarkably similar case currently pending. It is apparent that, under these circumstances, the mention of the appellee's being charged with a very similar rape of another woman posed enormous risks of prejudice that counsel could reasonably assume outweighed any potential benefits.

■ The course actually chosen by defense counsel, although unsuccessful, had an eminently reasonable basis

---

6. Appellee's brazen argument is reminiscent of that made by Mr. Szuchon who violently assaulted a Commonwealth witness during his homicide prosecution, then argued that a new trial was required because his constitutional rights were violated when the trial court ordered him shackled to counsel table to prevent further violence. *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984).

designed to effectuate his client's interests. Counsel vigorously attacked the victim's credibility and her identity of appellee as her rapist. Moreover, he presented a viable argument to the jury that perhaps the victim had fabricated the rape story after she had consensual intercourse with another man, predicated upon her testimony that a male acquaintance was supposed to have given her a ride on the evening of her rape. Thus counsel was able to present a plausible consent defense to the jury without bringing in appellee's risky "victims conspiracy/consent" defense. The jury did not accept counsel's theory. Nevertheless there was, most assuredly, a reasonable basis for counsel's chosen strategy, especially in light of the alternative which appellee now claims was available.[7] *See Commonwealth v. Spells*, 490 Pa. 282, 416 A.2d 470 (1980).[8]

For the foregoing reasons, the decision of the Superior Court is reversed and the case is remanded to the Court of Common Pleas of Philadelphia County for imposition of sentence.

NIX, C.J., did not participate in the consideration or decision of this case.

ZAPPALA, J., filed a dissenting opinion.

---

[7] The lower court discounted the strategy actually pursued on the basis that this defense was contradicted by evidence that the victim's earring was found in appellee's car. Counsel went with what little ammunition he had and attempted to explain away or gloss over the matter of the earring. The mere existence of evidence detracting from a defense does not render the presentation of that defense ineffective. *See Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714, 723–24 (1984), *cert. denied,* — U.S. —, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984).

[8] In *Spells*, we stated, *supra* at 490 Pa. 288, 416 A.2d 470:

Indeed, we wish to emphasize that proper assistance of counsel *inherently* includes counsel's determination of the course of tactics employed, which *must* involve counsel's subjective or "gut" feelings regarding such matters as his client's credibility, and the like. Where, as here, counsel gave appellant his considered opinion that appellant would be well-advised not to take the stand, where he pursued a course of action in closing argument intended to exploit this course of action, and where the appellant knowingly and intelligently decided not to testify, based on conversations with his lawyer, and the colloquy with the trial judge, we find no ineffectiveness.

ZAPPALA, Justice, dissenting.

I dissent. The Majority Opinion rests in large part on the premise that counsel could not have been found ineffective for failing to interview certain witnesses because those witnesses would have offered testimony contradictory to the defendant's own trial testimony. This premise ignores the remainder of the defendant's claim, that his trial testimony was contradictory to what actually happened. If the claimed ineffectiveness for failure to interview and present witnesses stood alone, and the evidence to be offered by those witnesses did not square with the defense presented, the Majority's reasoning would be beyond question. The defendant here, however, challenged the entire choice of strategy chosen by his counsel—presentation of false testimony by the defendant himself, and failure to present true testimony by other witnesses. Accepting the defendant's argument on its own terms, the "inconsistency" between the course of action foregone and the course actually chosen, which the Majority so heavily relies on, disappears.

Moreover, the Majority's determination that counsel had a reasonable basis designed to effectuate his client's interests for foregoing the "victims conspiracy/consent" defense contains within itself the seeds of a finding that it was in fact counsel who made the decision to present the defense of denial. If counsel was aware that the "victims conspiracy/consent" defense was in fact true, although difficult of proof and fraught with danger in the presentation of evidence of other charges to the jury, he could not have a reasonable basis for presenting a case that the defendant did not know the victim *based on the defendant's false testimony*. (A defense strategy based solely on testing the credibility of Commonwealth witnesses would, of course, not fall under the same analysis.)

Because of these internal inconsistencies, I am unable to agree with the Majority Opinion and would affirm on the basis of the Opinion of the Superior Court.