COMMONWEALTH of Pennsylvania, Appellee,

v.

**Dennis DRASS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1998.

Filed Oct. 1, 1998.

---

Theodore J. Krol, Asst. Public Defender, Hollidaysburg, for appellant.

David Gorman, Dist. Atty., Hollidaysburg, for Com., appellee.

Before DEL SOLE, JOHNSON and HESTER, JJ.

DEL SOLE, Judge:

Appellant was charged with and found guilty of Conspiracy to Commit Rape, Rape (Unconscious), Indecent Assault (Without Consent), Indecent Assault (Unaware), Recklessly Endangering, and Impersonating a Public Servant in a trial by jury. Appellant was sentenced to seven (7) years, three (3) months, to fifteen (15) years, eleven-and-one-half (11½) months of incarceration. Appellant filed a petition under the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9543, alleging ineffective assistance of counsel. Appellant's petition was denied and this appeal followed. We reverse and remand.

The trial court summarized the facts underlying this appeal as follows:

On November 10, 1989, an underage drinking party was held by a number of teenagers. The party was held North of the Presbyterian Cemetery at a location known as the "pits." The party was attended by numerous students, many of whom consumed various available alcoholic beverages. One of the students, [the victim], consumed a large amount of alcohol and passed out. She lay unconscious on the ground, waking occasionally to complain of being cold. Efforts were made to build a fire, and otherwise keep her warm, but had failed. When individuals appeared with flashlights and shouted "Freeze—police," the students ran and left their friend [the victim] behind unconscious, on the ground. The events which ensued were the subject matter of this trial.

When [the victim] awoke, she was alone and nude, save a pair of socks and a jacket. Her clothes were later discovered a distance away from where she lay, in a creek. The weather conditions that evening were cold and harsh, and one Eric Strobert heard of her predicament and went to rescue her. She was given clothing and an opportunity to clean herself at Strobert's

house, where she spent the night. During this time, [the victim's] parent's reported her missing and a full scale search ensued. [She] became aware that she was being sought through a phone call to a friend. [The victim] was interviewed by the prosecuting officer that day and evening and taken to the hospital where tests were completed. It was determined that she had received injuries consistent with sexual intercourse, along with various contusions, abrasions, and bruises to the back and head. [Victim] remembers little of the party and nothing of what transpired after she passed out.

Trial Court Opinion, 1/7/91 at 2–3.

Subsequent to those events, Eric Strobert notified the police that Appellant had admitted responsibility for the victim's condition. After compiling reports of various witnesses, police officers arrested Appellant as well as a co-defendant who was with Appellant at the site of the rape and was involved to some degree. Following a jury trial Appellant was convicted of the above charges. Motions for arrest of judgement and new trial were filed and denied by the trial court. A direct appeal was taken to the Superior Court which affirmed the trial court's decision. A petition for PCRA relief was later filed. Hearings were held after which the court denied Appellant's request for relief. This appeal followed.

Appellant asserts that his trial counsel was ineffective for three reasons: (1) failure to properly prepare Appellant for the presentation of his testimony; (2) failure to call character witnesses on behalf of Appellant, and (3) allowing reference to post-arrest silence, failure to request a mistrial after the prosecution's question regarding post-arrest silence and failure to appeal this issue.

■ We note that counsel is presumed to be effective; the burden is on the petitioner to establish ineffectiveness. *Commonwealth v. Garnett*, 418 Pa.Super. 58, 613 A.2d 569 (Pa.Super.1992). Under the PCRA, Appellant must demonstrate ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken

place. 42 Pa.C.S.A. § 9543(a)(2)(ii). The Pennsylvania Supreme Court has employed a three-pronged test for ineffectiveness articulated in *Commonwealth v. Beasley*, 544 Pa. 554, 678 A.2d 773, 778 (1996) (citing, *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)):

> [Appellant must demonstrate that] (1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced defendant.

*Id.* This standard is applicable to claims alleging ineffectiveness under the PCRA. *Commonwealth v. Kimball*, 453 Pa.Super. 193, 683 A.2d 666 (Pa.Super.1996), *allocatur granted*, 548 Pa. 615, 693 A.2d 587 (1997).

In elaborating on this standard, the Superior Court has applied the following test for ineffectiveness articulated in *Commonwealth v. Lewis*, 430 Pa.Super. 336, 634 A.2d 633, 636 (Pa.Super.1993):

> The threshold inquiry for evaluating claims of ineffective assistance is whether the issue, argument or tactic which counsel has forgone is of arguable merit. *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989). If the argument is of merit, the next inquiry is whether counsel's chosen course of action was designed to effectuate his client's best interests. Upon proof that counsel had some reasonable basis for pursuing the chosen course, the inquiry ends and counsel is presumed effective. *Commonwealth v. McNeil*, 487 A.2d 802, 506 Pa. 607 (1985). If a reasonable basis is lacking, the defendant must demonstrate that counsel's actions worked to his prejudice. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). The defendant must show that but for counsel's challenged strategy, there is a reasonable probability that the result would have been more favorable to the defendant. *Commonwealth v. Wells*, 396 Pa.Super. 70, 578 A.2d 27 (1990).

## I. Failure to properly prepare Appellant for trial.

■ Appellant first claims he was not prepared to take the stand on his own behalf

and that trial counsel failed to review proposed questions with Appellant. Appellant specifically calls attention to trial counsel's handling of a transcription of his statement to police officers. At trial, Appellant's counsel presented this statement to Appellant just prior to Appellant taking the stand. Because his counsel failed to review the statement with Appellant prior to his taking the stand, Appellant presents this as an example of counsel's ineffectiveness and argues that counsel has not provided at least a minimum level of trial advocacy. In support, Appellant cites *Commonwealth v. Saxton*, 516 Pa. 196, 532 A.2d 352 (1987) which states that a prejudice results despite the apparent strength of the prosecution's evidence when a minimum level of trial advocacy has not been shown to have been provided.

Appellant, however, has failed to demonstrate how he was prejudiced. The assertion that Appellant was inadequately prepared and that being presented with a transcript of his statement to the police shortly before testifying was damaging must be followed with some explanation of the harm caused to Appellant's case. The PCRA court found that even if trial counsel presented Appellant with his prior statement just before Appellant's testimony, Appellant's testimony was consistent with that prior statement. The defendant must show that but for counsel's challenged strategy, there is a reasonable probability that the result would have been more favorable to the defendant. *Wells*, 578 A.2d at 31–32. A mere mention, as in Appellant's brief, that Appellant was "discredited, confused and unaware of what to expect", Appellant's Brief at 6, is not sufficient to show prejudice in light of his consistent testimony. Accordingly, this claim fails.

## II. Failure to call character witnesses on behalf of Appellant.

■ Appellant's second contention is that trial counsel was ineffective for failing to call character witnesses on his behalf. It is well-settled that trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense. *Durst*, 559 A.2d at 506 (citing, *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986); *McNeil*, 487 A.2d at 806; *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Floyd*, 506 Pa. 85, 484 A.2d 365 (1984); *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983)). The Appellant must sustain his burden of demonstrating how the testimony of the uncalled witness would have been beneficial under the circumstances of his case. *Beasley*, 678 A.2d at 778.

■ Appellant has made no showing of how uncalled witness' testimony would have benefited him under the circumstances of the case but has simply argued why character testimony might be important in the instant case. Appellant does not specify who was available to give character evidence, whether they would be likely to be able to give proper character evidence under Pa.R.E. 405, what trait(s) the testimony would have asserted, or show how that testimony would have benefited defendant's case. Thus, this claim was also properly denied.

## III. Post-arrest silence

Lastly, Appellant contends that trial counsel was ineffective for allowing reference to post-arrest silence, for not requesting a mistrial after the prosecution's question regarding post-arrest silence, and for not appealing the issue.

Pennsylvania courts are wary of any prosecutorial inquiry into post-arrest silence. The Pennsylvania Supreme Court's intention to insure that the accused's post-arrest silence is not used to his detriment in legal proceedings has been firmly established. *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982). Such inquiry implicates a defendant's Fifth Amendment right to silence as applied to this Commonwealth through the Fourteenth Amendment. The U.S. Supreme Court has held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence [at trial] or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678. 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678, which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. *Griffin*, 380 U.S. at 614, 85 S.Ct. at 1232, 1233. See, *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590, 596 (1973) (ruling, "[t]o allow comment on [defendant's] silence at the time of the arrest would also make the assertion of his privilege costly.")

■ In this case, three instances exist where the Appellant's Fifth Amendment right to silence was implicated. The first was during the prosecution's examination of the arresting officer, the second was by defense counsel during counsel's cross examination of the arresting officer, and the third was the cross examination of defendant by the prosecution.

During the trial testimony of Officer O'Leary concerning the statement that he took from defendant, the following was stated:

Q. What was the demeanor of the defendant when he gave you that statement?

A. He was very defensive.

Q. Did he appear afraid or scared or anything of that nature?

A. No. The statement, the interview ended abruptly when a third party stated, just tell him that you want to talk to your lawyer. And that was the end of the statement.

Q. Was somebody with him when he was talking to you?

A. His mother, Mrs. Drass.

N.T., 10/30/90, at 274.

On cross examination of Officer O'Leary by trial counsel the following occurred:

Q. Mr. Drass denied being involved at all when he talked to you, isn't that correct?

A. That's correct.

Q. And then the interview was broken off so that he could talk to his attorney.

A. That is correct.

Q. And isn't that what the Miranda warnings are all about?

A. That is correct. I did advise that he should talk to his attorney and recontact me and he was given several opportunities to give a full and complete statement.

Q. Did you contact his attorney.

A. Yes, I did. I asked you several times if you would come down for a statement

Q. And it's proper, is it not, to remain silent?

A. That's his prerogative.

Q. Nothing can be taken from that whatsoever.

A. That is correct.

N.T., 10/30/90, at 296–97.

During the cross examination of the Defendant, the prosecution posed to the defendant the following question:

Q. I ask the question again, sir. Anyone who has nothing to hide would normally go to the police and tell them what happened.

A. Probably.

Q. But you didn't.

A. No.

Q. In fact, you were given an opportunity to talk to the police weren't you?

Mr. Woodcock (Appellant's trial counsel): Now if the Court please. I am going to object to this and I'm getting to the point where I'm going to ask for a mistrial.

N.T., at 376.

This Court finds that trial counsel's failure to request a mistrial in the face of violations of Appellant's constitutional right against self-incrimination constitutes ineffective assistance of counsel.

Of the three instances where Appellant's Fifth Amendment right to silence is mentioned, this Court focuses on the cross examination of Appellant and the question from the prosecutor, "I'll ask the question again, sir. Anyone who has nothing to hide would

normally go to the police and tell them what happened." N.T., 10/30/90, at 376.

█ It may be argued that after the first comment on Fifth Amendment silence that the trial attorney's tactic of explaining the constitutional privilege had a reasonable basis.[1] However, by the third instance, including trial counsel's questioning, trial counsel had no conceivable reason not to request a mistrial. Applying the three prong test in *Pierce*, first it must be decided if Appellant's claim is of arguable merit. It is well settled that a clear violation of the accused's constitutional right against self-incrimination results from references to accused's silence while in police custody. *Commonwealth v. Hyneman*, 424 Pa.Super. 415, 622 A.2d 988, 989 (Pa.Super.1993); *Commonwealth v. Greco*, 465 Pa. 400, 350 A.2d 826, 828 (1976); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). We therefore find that Appellant has a claim of arguable merit.

The second question is whether reasonable grounds existed to support trial counsel's failure to ask for a mistrial following the prosecution's inquiry into Appellant's Fifth Amendment silence. We must examine the approach pursued by trial counsel in light of the available alternatives. *Commonwealth v. Clark*, 533 Pa. 579, 585, 626 A.2d 154, 157 (1993). If we conclude that the alternatives not chosen offered a substantially greater potential for success than the tactics utilized, a finding of ineffectiveness is appropriate. *Id.* The alternatives must be examined only as a means of determining whether the course chosen had a reasonable basis. *Id.*

In this jurisdiction it is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody. *Hyneman*, 622 A.2d at 989. In this case, trial counsel refrained from demanding a mistrial in the face of an impermissible references to his client's Fifth Amendment privilege. We acknowledge that the trial counsel noted in his objection that he was getting close to asking for a mistrial. N.T., 10/30/90, at 376. However, counsel failed to actually ask for one.

We find that trial counsel had no reasonable basis for failing to request a mistrial. In 1966, the United States Supreme Court decided *Miranda v. Arizona* which stated:

In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.*

*Miranda v. Arizona*, 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624–25 n. 37, 16 L.Ed.2d 694 (1966) (emphasis added). The Miranda Court's decision is accentuated even more in light of our Pennsylvania Supreme Court's view that *"we would be naïve if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt."* *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765, 767 (1972) (quoting, *Walker v. United States*, 404 F.2d 900, 903 (5th Cir.1968) (emphasis added)). See, *Hyneman*, 622 A.2d 988. Appellant's trial counsel is deemed to be aware of the holdings in both *Miranda* and *Haideman* which had been decided at the time of Appellant's trial, and which described the potential for unfair prejudice associated with violations of an accused's Fifth Amendment rights. We are, therefore, constrained to find no

---

1. The exchange between the prosecutor and the testifying officer may, however, fall under *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765, 766–67 (1972) (noting that a testimonial reference to accused's silence and his request for a lawyer is a violation of accused's Fifth Amendment right.); and *Commonwealth v. Hyneman*, 424 Pa.Super. 415, 622 A.2d 988, (Pa.Super.1993) (Stating that it is a clear violation of an accused's Fifth Amendment rights to reference, at trial, his silence while in police custody). At trial, the officer in the instant case testified that Appellant had invoked his right to silence and asked the officer to be allowed to speak with an attorney. The cases cited here hold that both testimony on the accused's silence and testimony that the accused asked for a lawyer are impermissible violations of Appellant's Fifth Amendment right. Because this Court grants relief on other grounds, we need not explore the applicability of these cases.

reasonable basis for trial counsel's failure to request a mistrial.

Finally, Appellant must demonstrate how the alleged ineffectiveness prejudiced him. *Pierce*, 527 A.2d at 975.

Our Superior Court's *en banc* decision in *Commonwealth v. Kimball* held that the *Strickland* standard, as articulated in *Pierce*, is the appropriate measure for prejudice. We rearticulate the standard here:

> Initially, we consider what standard of review is applicable to claims alleging ineffective assistance of counsel under the PCRA. In *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984), the United States Supreme Court set forth the following standard to be applied on direct appeal or in federal collateral proceedings when considering whether counsel was ineffective:
>
> > The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
> >
> > \* \* \* \* \* \*
> >
> > [To demonstrate that counsel was ineffective] the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.... [T]he defendant must [also] show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were *so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.* Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

(Emphasis added). Our supreme court adopted this standard in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). *Kimball*, 683 A.2d at 668–69 (1996).

Trial counsel's failure to request a mistrial in the instant case deprived Appellant of a trial whose result was reliable and also of a reviewable ruling on counsel's request for a mistrial. Knowing that recognized prejudice accompanies a comment or testimony on an accused's Constitutional right to silence, a motion for mistrial should have been made.[2] Appellant's conviction was based, primarily, on the testimony of three other people. Two witnesses testified that Appellant boasted to them that Appellant had had sex with the victim while the victim was unconscious. Appellant claimed to be joking. The third witness was Appellant's partner who, with Appellant and claiming to be police, raided the outdoor party which then became the situs of the rape. The Appellant claims innocence and maintains that the third witness, his partner, is the rapist. There is no physical evidence which would tend to implicate either Appellant or his partner; the victim bathed and changed clothes prior to being examined at the hospital.

It cannot be determined that the evidence against Appellant was so overwhelming that conviction would have followed beyond a reasonable doubt or even that the evidence is merely cumulative of other proper, persuasive evidence. It also cannot be said that mention in open court of Appellant's silence and request for a lawyer was so slight or tangential in it's effect as to be de minimus. In fact, in this case the prosecutor even went further than commenting on silence. He asked Appellant to acknowledge that one who has nothing to hide would come forward to the police, thus highlighting for the jury a supposed connection between a person's lack of innocence and their failure to speak to authority.

Counsel's errors were sufficiently serious as to deprive defendant of a trial whose

---

**2.** Our Supreme Court has held that, under some circumstances, adequate curative instructions may remedy an improper reference to an accused's post-arrest silence. *Commonwealth v. DiPietro*, 538 Pa. 382, 648 A.2d 777, 779 (Pa.1994)(citing, *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976)). No instructions were given concerning the Appellant's Fifth Amendment rights.

result is reliable. Trial counsel did not function as the 'counsel' guaranteed the defendant by the Sixth Amendment. Consequently, in the instant matter we find that Appellant has satisfied the third prong of the Pierce test for ineffectiveness of counsel.

Under our judicial system it has never been the burden of the accused to convince the court of his or her innocence. That burden is carried by the prosecution. With this in mind, the question of the accused's exercise of his Fifth Amendment right to silence should never have been asked. No matter the intent behind the prosecution's question, it is easily interpreted by the jury as a question regarding the Appellant's Constitutional rights, a question which places the burden of proof on the accused. That the trier of fact will act as if the burden of proof has shifted to the accused or even that they will simply infer guilt from the silence itself are very real possibilities which the Fifth Amendment guards against. Even the trial court notes that the Commonwealth made reference to the Defendant's opportunity to talk to the police, though does not regard it with the same degree of concern. However, in this case, the guilt of the accused turned on a credibility determination by the jury. No physical evidence existed and the jury was asked to believe the testimony of one side or the other. When a court's decision turns solely on credibility issues, how much greater the chance for bias when defendant's constitutional right to silence is used against him. Therefore, trial counsel, in the face of the prosecution's improper questioning regarding Fifth Amendment silence, was ineffective for failing to request a mistrial and for failing to preserve the issue for appeal.

Accordingly, since we find that trial counsel was ineffective, we REVERSE the order of the PCRA court and REMAND for a new trial.