J-S36033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CALVIN HAMLETT, JR. | : | |
| | : | |
| Appellant | : | No. 177 WDA 2022 |

Appeal from the PCRA Order Entered January 12, 2022
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014824-2015

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: FEBRUARY 7, 2023**

James Calvin Hamlett, Jr., appeals from the order dismissing, without a hearing, his first and timely petition filed pursuant to the Post Conviction Relief Act (PCRA). **See** 42 Pa.C.S.A. §§ 9541-9546. On appeal, Hamlett contends that his trial counsel engaged in two discrete instances of ineffective assistance of counsel. Thereafter, Hamlett asserts, as a discovery claim, that the PCRA court erred by not ordering the Commonwealth to produce his cell phone, which was, and continues to be, apparently held by law enforcement. As it allegedly contains GPS-tracking information, possibly leading to exculpatory evidence, Hamlett seeks this cell phone for inspection and/or forensic examination. After a thorough review of the record, we find no validity to any of Hamlett's averments and affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

By way of background, Hamlett,

who was sixty-one years old at the time of the crimes, met [the victim] when he gave her a ride in his jitney[, an unlicensed taxi]. Over time, [Hamlett] became friends with [the victim] and her family. On September 16, 2015, [Hamlett] took [the victim], then thirteen years old, to a Pittsburgh Pirates game. After the game, [Hamlett] took [the victim] to a restaurant, and, at approximately midnight, the two left for [the victim's] home.

Instead of driving [the victim] home, [Hamlett] drove to several neighborhoods while the two chatted. At some point, [the victim] fell asleep, and woke up after 2:00 a.m. [The victim] panicked and asked if her mom knew where she was. [Hamlett] reassured [the victim] that he had spoken to her mother, and was taking [the victim] to the home of [Hamlett's] daughter. Eventually, [Hamlett] declared that he had changed his mind and that he would take [the victim] home.

[Hamlett] drove back to [the victim's] neighborhood, but took the vehicle to an alley with woods on one side and an abandoned house on the other. [The victim] was scared and opened the door to leave, but [Hamlett] promised that he would take her home. [The victim] closed the door, and [Hamlett] grabbed her jacket, causing [the victim] to try and leave through the passenger door. [The victim] screamed for help, but [Hamlett] grabbed her hooded sweatshirt and hair and told her to "shut the f*** up or I will knock you the f*** out." N.T. Vol. I, 6/24-28/16, at 53. [Hamlett] allowed her to go outside to use the bathroom, and dragged her back to the vehicle in a headlock. At some point during these events, [Hamlett] placed something sharp against her neck which caused pain.

Back inside the vehicle, [Hamlett] told [the victim] to take off her clothes. [Hamlett] inserted his finger into her vagina and kissed her breasts. He pulled his pants down and appeared to pleasure himself. Eventually, [Hamlett] told [the victim] that he loved her too much and could not "do this." He told her to put her clothes on, then drove her home.

[The victim] immediately told her mother, who called the police. [The victim] went to a hospital, where a rape kit was performed. Photographs were taken, one of which depicted a fresh

mark where [Hamlett] had pushed the object into her neck.

Due to the foregoing, [Hamlett] was charged with unlawful restraint of a minor, two counts of aggravated indecent assault, simple assault, indecent assault, attempted rape, terroristic threats, and kidnapping of a minor. The jury convicted [Hamlett] at all counts. [Hamlett] was thereafter sentenced to three mandatory minimum sentences of life imprisonment, which applied due to his two prior convictions for sexual crimes.

*Commonwealth v. Hamlett*, 1172 WDA 2016 at *1-3 (Pa. Super., filed Sept. 11, 2018) (unpublished memorandum) (some alterations).

In his direct appeal before this Court, Hamlett challenged the sufficiency of the evidence related to one of his aggravated indecent assault convictions, *see* 18 Pa.C.S.A. § 3125(a)(2), as well as the sufficiency of evidence utilized against him in proving unlawful restraint. Hamlett also contested the admission, at trial, of the victim's forensic interview as a prior-consistent statement and, too, the legality of his three mandatory life sentences.

We found that, because the Commonwealth did not prove beyond a reasonable doubt that the victim was less than thirteen years of age at the time of the assault, the evidence was insufficient to convict him of a first-degree graded felony.[1] However, we also determined that the Commonwealth had presented sufficient evidence establishing Hamlett's guilt, beyond a reasonable doubt, as to the lesser-included second-degree felony charge of aggravated indecent assault, which was not dependent on that thirteen-years-

---

[1] *See* 18 Pa.C.S.A. § 3125(b).

of-age threshold. After making these findings, we remanded the case for resentencing solely at that aforementioned aggravated indecent assault conviction. In all other respects, we affirmed Hamlett's judgment of sentence, finding no validity to his other claims.

Following a granted petition for allowance of appeal that was filed with our Supreme Court, wherein that Court ultimately affirmed our disposition of his direct appeal, Hamlett was resentenced. Specifically, Hamlett received three concurrent life sentences as well as two concurrent ten-year terms of probation, to be served consecutive to his life sentences. Hamlett did not file a post-sentence motion or notice of appeal after resentencing.

Hamlett filed the present PCRA petition within one year of his resentencing. Ultimately, his petition was dismissed without a hearing. Hamlett timely appealed from this dismissal, and the relevant parties have complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, this matter is ripe for review.

On appeal, Hamlett asks:

1. Were his post-conviction filings sufficient as to the issue of pre-trial preparation to demonstrate that his ineffective assistance of counsel claim had arguable merit?

2. Were his post-conviction filings sufficient as to the issue of a specific hearsay objection to demonstrate that his ineffective assistance of counsel claim had arguable merit?

3. Did the PCRA court err by not ordering the Commonwealth to produce his cell phone for inspection and/or forensic examination?

*See* Appellant's Brief, at 4.[2]

Preliminarily, we note our well-settled standard of review in an appeal stemming from a PCRA petition's dismissal: "[w]e review a ruling by the PCRA court to determine whether it is supported by the record and is free of legal error. Our standard of review of a PCRA court's legal conclusions is *de novo*." ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (citations omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Bishop***, 266 A.3d 56, 62 (Pa. Super. 2021) (citation omitted).

As Hamlett's first two issues aver that he received ineffective assistance of counsel, we employ the following precepts:

> We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove: [(1)] his underlying legal claim has arguable merit; [(2)] counsel's actions lacked any reasonable basis; and [(3)] counsel's actions prejudiced him. Failure to satisfy *any* prong of the ineffectiveness test requires dismissal of the claim. Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

---

[2] Hamlett's statement of questions involved does not separate, nor specifically identify, issues one and two, but merely asks whether sufficient facts were pled to show arguable merit as to his undefined ineffective assistance of counsel contention. *See* Appellant's Brief, at 4. Such a description is likely violative of Pennsylvania Rule of Appellate Procedure 2116(a), which requires a concise statement "expressed in the terms and circumstances of the case[.]" Pa.R.A.P. 2116(a). However, because the headings and argument contained later in his brief discretely identify his ineffective assistance challenges, we will overlook this infirmity as "fairly suggested" by the overarching question that was originally posed. ***Id***.

*Commonwealth v. Urwin*, 219 A.3d 167, 172 (Pa. Super. 2019) (internal citations and quotation marks omitted) (brackets and emphasis added). As to what constitutes prejudice, our Supreme Court has stated: "a defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." *Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014) (citations, brackets, and internal quotation marks omitted).

Hamlett's first ineffective assistance claim asserts that trial counsel never prepared him to testify at trial, which is bolstered through the inclusion of an in-text picture from trial counsel's file, wherein "prep Hamlett testimony," contained within a checklist of other actionable items, is not crossed off. Appellant's Brief, at 18-19 (all other enumerations in that checklist were crossed off). Hamlett concedes, however, that there is "no reported case where there's been a determination that counsel rendered ineffective assistance for failing to prepare their client to testify[.]" *Id*., at 19; *but see Commonwealth v. Drass*, 718 A.2d 816, 819 (Pa. Super. 1998) (dismissing an inadequate preparation claim, within the context of ineffective assistance, on prejudice grounds).

Despite this acknowledgement, Hamlett believes he presented factual averments within his PCRA petition that could establish bases for relief, specifically illuminating that "(1) Hamlett corroborated the Commonwealth's

evidence; (2) Hamlett affirmed consciousness of guilt; and (3) Hamlett focused attention to imagery of 'little people' frequenting the backseat of his car in a desperate attempt to normalize the fact of the complainant being in the backseat–the alleged place of the assault." Appellant's Brief, at 20 (record citations and emphases omitted). Hamlett contends that "testimony preparation would've gone a long way to keep [himself] from digging a deeper hole[.]" *Id*.

We note that Hamlett's three examples, listed above, are nothing but bald and editorialized assertions as to the context of his testimony at trial. In his brief, Hamlett, without elaboration or citation to analogous authority, merely cites to his PCRA petition. It strains credulity that Hamlett's singular sentence dedicated to his apparently deficient testimony is somehow self-proving of prejudice. While, expanding further, the PCRA petition contains at least two arguably relevant record citations, *see* Petition for Post-Conviction Relief, 10/17/21, at 12-13, there is still very little development of the ultimate points he was tasked with demonstrating, namely prejudice and arguable merit. Based on these deficiencies, this ineffective assistance claim could be waived. *See, e.g*., Pa.R.A.P. 2119(a); *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (requiring an appellant to present sufficiently developed arguments, which, too, contain citations to the record and legal authorities. If this Court is impeded from conducting meaningful review, certain issues may be waived). However, given our conclusion that Hamlett

has failed to demonstrate arguable merit to his ineffective assistance assertion, we decline to find waiver.

Hamlett fails to discuss the import of the colloquy he gave at trial. That colloquy expressly refutes any notion that he did not have sufficient time to consult with trial counsel about his rights and ability to provide testimony:

> THE COURT: You have met with [counsel] on many occasions, you have had the opportunity to ask him questions and discuss with him your rights as a [d]efendant in a criminal case, the discovery and evidence in this case and the charges that you are facing, the statutory maximum, all of that; is that correct?
>
> [HAMLETT]: Yes.
>
> THE COURT: And you have also discussed with him your trial strategy; is that correct?
>
> [HAMLETT]: Yes.
>
> THE COURT: And he has given you his advice regarding all of these matters and you have considered that advice; is that true?
>
> [HAMLETT]: Yes.
>
> THE COURT: Has he discussed with you your right as a [d]efendant to remain silent?
>
> [HAMLETT]: Yes.
>
> THE COURT: And you understand that as a [d]efendant the burden of proof is on the Commonwealth and you need do nothing. You cannot be compelled to testify and you do not have to present a defense or testify?
>
> [HAMLETT]: Yes.
>
> THE COURT: You have also discussed with him your absolute right to testify if you choose to do so?
>
> [HAMLETT]: Yes.

THE COURT: And you understood that if you testify that it would be under oath and subject to cross-examination as the other witnesses have?

[HAMLETT]: Yes.

THE COURT: With regard to your trial strategy in this case, you have ample opportunity to discuss that with [counsel] as well and he has given you his advice with regard to whether or not he believes that you should present a defense or testify; is that correct?

[HAMLETT]: Yes.

THE COURT: And you have considered all of that?

[HAMLETT]: Yes.

N.T., 6/24-28/2016, at 154-56. After Hamlett then proceeded to speak with counsel off the record, the colloquy continued:

THE COURT: … Hamlett, you have had occasion to talk with [counsel] before just now. You have spoken with him several times regarding this issue; is that true?

[HAMLETT]: Yes.

THE COURT: And so your last minute discussion with him is just a final confirmation of your thought process, but it is not the only opportunity that you have had to discuss whether or not you wish to testify with your attorney; is that true?

[Hamlett]: Yes. We have talked about it a bunch of times.

THE COURT: So this morning's decision is not one that you are making spur of the moment but one that you have actually engaged in long discussions and thoughts over a period of time, is that true?

[HAMLETT]: Yes.

THE COURT: And what decision have you made?

[HAMLETT]: I am going to testify.

THE COURT: You do intend to testify?

[HAMLETT]: Yes.

THE COURT: And you have made this decision having had a full opportunity to discuss it with [counsel] and considering his advice, but it is your decision and not his; is that true?

[HAMLETT]: Yes.

*Id*., at 156-57. A few moments later, Hamlett stated on the record that he was satisfied with "the services" that his counsel had provided to him and that all decisions he was making were through his own volition and after full consultation with counsel. *Id*., at 158-59.

Based on the contents of the colloquy, wherein Hamlett repeatedly indicated that he was fully apprised of the dynamics of testifying on his own behalf, we are unable to see how his underlying claim has any merit, as any departure would be a contradiction of his own words. Moreover, Hamlett fails to discuss this colloquy in his brief and has provided no compelling basis to deviate from his express satisfaction with his counsel as well as his statements demonstrating his complete knowledge of what it would specifically mean to testify. In the absence of any reason to deviate from what he stated before the court at trial, we find no merit to his ineffective assistance of counsel argument in this domain.

In his second ineffective assistance claim, Hamlett takes issue with one of the questions asked by the Commonwealth during his cross-examination,

as it "put into the minds of the jury an unsubstantiated fact that Hamlett's wife was surprised of Hamlett's going to the Pirates game with the [victim]." Appellant's Brief, at 21-22 (citing PCRA petition). Hamlett believes that the question implied he was conniving and had improper motives. **See id**., at 22.

The question, replicated in full: "[s]o if your wife had told the police that she was surprised that you had gone to the game with [the victim] would you be surprised by that?" N.T., 6/24-28/2016, at 227 (coming immediately after being asked and responding "yes" to the question of whether Hamlett told his wife that he was going to the baseball game with the victim). When Hamlett indicated that he would be surprised by his wife's statement, this latter, leading question that was allegedly hearsay, attacked his character for truthfulness, i.e., showing that he had bad character. **See** Appellant's Brief, at 23 (citing PCRA petition).

Other than providing one citation to authority, which vaguely discusses the relevance of character evidence, **see id**., at 24, it is unclear how Hamlett concludes that this previously identified question "was more than just a singular, errant admission of hearsay. This was a leading question that painted [him] in an unfair light." **Id**.[3] Furthermore, Hamlett does not provide any clear indicia that there was, in fact, hearsay admitted into the record, therefore

---

[3] Hamlett's argument confusingly blends hearsay concerns with problems associated with the admission of character evidence without clearly distinguishing between the two subjects.

- 11 -

failing to demonstrate merit to his underlying claim.

Hearsay is commonly understood to be an out-of-court statement offered by a party "to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). Hearsay may be admissible if such a statement is made pursuant to one of its exceptions. *See* Pa.R.E. 802. Hamlett has utterly failed to show both what the out-of-court statement, in fact, is and, too, that such a statement was being used to demonstrate the truth of the matter it asserted. Without any clear indication that counsel was required to object and that such an objection would have likely been meritorious, there is no validity to Hamlett's claim that he was provided with ineffective assistance of counsel. To the extent Hamlett argues that the Commonwealth's question improperly delved into issues related to character evidence, Hamlett does not provide any credible proof that the very nature of this singular complained-of question, when faced with the overwhelming amount of evidence employed against him at trial, reasonably had an adverse effect on the outcome of proceedings. Other than providing an undeveloped argument that this question highlighted Hamlett's character unfairly, we are unable to discern any clear existence, or even arguable existence, of prejudice to the extent necessary that would be capable of providing him with relief under the PCRA.

In his final issue, Hamlett believes the PCRA court should have granted his discovery request related to his cell phone, which would have then been used for forensic examination purposes that could have served to discredit the

victim's testimony. *See* Appellant's Brief, at 24-25.[4] Specifically, Hamlett maintains that the cell phone's GPS data would have corroborated his route of travel on the night of the alleged incident between him and the victim. *See id*., at 25. Hamlett would have then been able to advance an ineffective assistance of counsel argument against his trial counsel for failing to adequately investigate the cell phone and its potentially exculpatory data. *See id*.

In his petition, Hamlett moved "for discovery to advance his claim as it pertains to lack of investigation surrounding his cell phone. That cell phone is, and has been, in the sole possession of the Commonwealth. It has never been requested nor turned over to the defense. Hamlett avers it'll contain exculpatory evidence that'll tend to demonstrate his innocence." Petition for Post-Conviction Relief, dated 10/17/21, at 19.

Our Rules of Criminal Procedure establish that "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). "The PCRA

---

[4] The PCRA court found that Hamlett had waived this issue, believing that his PCRA petition singularly asserted that his trial counsel had erred by not seeking his cell phone prior to or at trial and that there was no indication before the PCRA court that he was, now, making a discovery-based request. *See* Trial Court Opinion, 4/20/22, at 5. As the Commonwealth points out, Hamlett's "request for discovery in the conclusion paragraph of his PCRA petition is not a [m]otion for [d]iscovery that placed a request before the court." Appellee's Brief, at 27. Given our ultimate disposition, we need not examine whether, in fact, Hamlett filed an adequate discovery motion.

and the criminal rules do not define the term 'exceptional circumstances.' Rather, it is for the trial court, in its discretion, to determine whether a case is exceptional and discovery is therefore warranted." **Commonwealth v. Frey**, 41 A.3d 605, 611 (Pa. Super. 2012) (citation omitted). Although "mere speculation that exculpatory evidence might exist does not constitute an exceptional circumstance," **see id**., at 612, Hamlett claims that his phone possessed GPS capabilities that would have tended to show his innocence. **See** Appellant's Brief, at 26-27.

While is appears true that, given the PCRA court's finding of waiver, it "didn't consider, or weigh … the [discovery] request in the first instance," Appellant's Brief, at 27, Hamlett has (1) not shown that remand is necessary or required; and (2) failed to demonstrate the "extraordinary" nature of his request.

As to the latter issue, Hamlett has not shown that he does not have access to his own GPS data or cannot pursue the same without having to rely upon the Commonwealth. Moreover, other than stating in passing that such data would have corroborated his testimony, Hamlett has not proven that this alleged corroboration would have been materially helpful, if not potentially exculpating, so as to establish those required exceptional circumstances. Therefore, we are left with what appears to be a speculative claim, which, pursuant to existing precedent, does not create a condition necessitating discovery.

Distilled down, Hamlett concludes that cellular GPS data, if possibly beneficial or corroborative of travel-related testimony, inherently constitutes an exceptional circumstance that can be sought, via discovery, during PCRA proceedings. Much like other places in his brief, however, Hamlett has failed to show, with any kind of authority, why a situation such as his constitutes an exceptional circumstance demanding further discovery. Furthermore, even excepting his lack of included authority, other than vaguely discussing his travel in conjunction with his testimony, Hamlett has not revealed why the cell phone data would clearly tend to prove his innocence. In the absence of any definite showing that exceptional circumstances exist, we find no validity to his claim that discovery should have been granted.

With all three of Hamlett's issues being unmeritorious, we affirm the lower court's dismissal of his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/7/2023

- 15 -