J-S41034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TROY DILLARD, | : | |
| | : | |
| Appellant | : | No. 24 EDA 2018 |

Appeal from the PCRA Order November 30, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003340-2010

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 21, 2018**

Appellant, Troy Dillard, appeals from the order entered in the Bucks County Court of Common Pleas, which denied his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its opinion, the PCRA court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

Appellant raises the following issues for our review:

> DID THE PCRA COURT ERR IN NOT FINDING PLEA COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO AN INADEQUATE *NOLO CONTENDERE* PLEA COLLOQUY?

> DID THE PCRA COURT ERR IN NOT FINDING PLEA COUNSEL INEFFECTIVE FOR FAILING TO FILE AN APPEAL ON THE INADEQUATE *NOLO CONTENDERE* PLEA COLLOQUY?

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

---

\*   Former Justice specially assigned to the Superior Court.

DID THE PCRA COURT ERR IN NOT FINDING FIRST PCRA COUNSEL INEFFECTIVE FOR NOT RAISING THE INADEQUATE *NOLO CONTENDERE* PLEA COLLOQUY IN THE INITIAL PCRA PETITION[?]

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 109 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa.Super. 2012).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rea B. Boylan, we conclude Appellant's issues merit no relief. The PCRA court's opinion comprehensively discusses and properly disposes of the questions presented. (**See** PCRA Court Opinion, filed February 12, 2018, at 7-13) (finding: Appellant was well aware of nature and consequences of entering *nolo contendere* plea, and entered his plea knowingly, voluntarily, and intelligently; plea counsel's actions did not induce invalid plea; and prior counsel's failure to challenge plea

colloquy on appeal does not constitute ineffectiveness of counsel; plea court conducted separate colloquy explaining no contest plea; in response to all questions posed, Appellant stated he understood, and explained he was not under the influence of any substances; Appellant affirmed he understood plea court's explanation of charges, permissible ranges of sentences, and Appellant's rights; Appellant acknowledged he and plea counsel had discussed meaning of *nolo contendere* plea at "great length"; Appellant thrice affirmed he was satisfied with plea counsel's familiarity with case, and he understood nature and consequences of no contest plea; Appellant actively participated in plea proceedings; Appellant's plea was valid). The record supports the PCRA court's reasoning. ***See Conway, supra***. Accordingly, we affirm on the basis of the PCRA court opinion.

Order affirmed.

President Judge Emeritus Stevens joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/18

- 3 -

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA       :

    v.                           :           CP-09-CR-0003340-2010

TROY DILLARD                       :

## OPINION

Petitioner Troy Dillard ("Appellant") appeals from this Court's dismissal of his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 et seq, on November 30, 2017. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## I.   FACTUAL BACKGROUND

The following is a summary of the relevant facts as set forth in our opinion filed on June 9, 2014:

> On March 29, 2010, at approximately 6:25 a.m., Claire Forte was preparing to leave work from her home in Newtown Borough, Bucks County. Ms. Forte entered her attached garage from inside the home and opened the exterior garage door to leave for work. Ms. Forte was opening the trunk of her car, a 2007 550 class Mercedes sedan valued at over $65,000, when she was attacked from behind by Jerry Laventure, Akim Pierre, and Appellant. All three were all dressed in dark clothing and wearing gloves, and two were wearing dark skull caps.
>
> After grabbing Ms. Forte, the three individuals attempted to shove her into the open trunk of her Mercedes. Ms. Forte resisted, and was thrown to the ground by her attackers, she screamed as she was held on the ground and Mr. Pierre punched her in the mouth and shoved his fist down her throat as one of the other attackers grabbed her and held her legs. As Ms. Forte attempted to scream again one of the men placed his hands tightly around her neck causing her to believe she was about to die. During this attack one of the assailants opened the door to her home and set off the door sensor alarm. The men dragged Ms. Forte across the garage and out from behind the Mercedes. One of the men grabbed the keys from her hand as she was being pulled outside the garage. Appellant drove the Mercedes out of the garage and away from her residence. The two other men ran from the garage and across the street and drove away in a silver Range Rover.
>
> A Lower Makefield police officer heard a call over his radio and observed a Range Rover matching the description. The officer pursued the car into Ewing Township, New Jersey. Local police assisted and eventually arrested Mr. Laventure and Mr. Pierre, the two occupants of the Range Rover. The Range Rover had been stolen from Hamilton

1



Township, New Jersey, in December 2009. Inside the Range Rover, police found a realistic-looking, 9-millimeter-type BB gun. Appellant later confessed to another inmate in prison that the gun belonged to him. Police recovered rope, a bungee cord and a screw driver from the center console of the Range Rover. In the back seat, police found tools commonly used to enter and steal cars. They also recovered a parking permit for the Princeton Junction, West Windsor train station parking lot, which is the same parking lot where Ms. Forte parked her Mercedes every day before taking the train to her office in New York. The permit had been stolen from another car in that same lot on March 12, 2010. Police also found keys from numerous other vehicles inside the stolen Range Rover and a leather bound owner's manual case for a 550 class Mercedes, although the manual itself was removed. Investigation revealed that an owner's manual had been stolen from a similar Mercedes in the West Windsor parking lot on March 16, 2010.

Police also recovered a pair of white/tan gloves and the right glove had blood on the fingers and palm area. DNA testing by National Medical Services Laboratory revealed that the blood on the outside of the right glove belonged to Ms. Forte. The lab also found DNA from all three co-defendants, including Appellant, on that same glove.

At approximately 9:00 p.m. on March 29, 2010, law enforcement officers in New Jersey and the U.S. Marshall's Warrant Service Team observed Appellant exit the stolen Mercedes. Police attempted to stop Appellant as he entered a green vehicle, but he fled and led the police on a high-speed chase exceeding 90 miles per hour. Police called off the pursuit as Appellant drove on the opposite side of a busy road and placed other motorists at risk. On April 6, 2010, police located Appellant in Chambersburg, PA. Appellant fled on foot and resisted, requiring police to taser him in order to take him into custody. Police found the keys to Ms. Forte's Mercedes under the mattress of the bed where Appellant was staying. In recorded conversations from a prison phone the Appellant can be heard asking whether police had found the keys.

Ms. Forte recalled seeing the Range Rover parked on the street in front of her house about a week before she was attacked. She also saw it following her on I-95 on the way home from the West Windsor parking lot. Mr. Laventure stated that he planned the robbery in advance with Appellant and Mr. Pierre. They had planned to steal the car two or three different times before March 29, 2010. Approximately three weeks earlier, Appellant had pointed to the Mercedes at the Princeton Junction Train Station and stated, "I am going to take that car." On that date Appellant smashed out a window of a similar Mercedes, stealing an I-Pod and the owner's manual. A few days later Mr. Pierre, Mr. Laventure and Appellant waited for Ms. Forte to return to her car at the train station so they could follow her home to determine where she lived.

Mr. Laventure described to police how the three had attempted to steal the Mercedes previously. On one occasion, the three men stole two vans and planned on boxing Ms. Forte in her car on her street to carjack the vehicle. That plan fell through when one of the vans would not start. On the date of the robbery, Appellant gave Mr. Laventure his BB gun so that he could "handle the lady." Mr. Laventure stated that he carried the BB gun with him during the assault. He described seeing Mr. Pierre's hand in Ms. Forte's

2

'mouth while she was on the ground. After Appellant drove off in the stolen Mercedes, Mr. Laventure and Mr. Pierre got in the Range Rover to flee the scene. When Mr. Pierre got into the SUV he told Mr. Laventure that he stuffed his whole hand "down that bitch's throat."

Before police apprehended Mr. Pierre and Mr. Laventure, Appellant called Mr. Pierre's cell phone several times to find out where they were. Police identified Appellant's fingerprints on the license plate attached to the stolen Range Rover. Appellant's DNA profile was identified on the steering wheel of the Mercedes, on a black knit hat recovered from the Mercedes, and on the glove in the Range Rover along with Ms. Forte's blood. N.T. 10/18/10, pp. 17-25.

Trial Ct. Op., June 9, 2014.

## II.   PROCEDURAL HISTORY

On October 18, 2010, Appellant pled guilty to charges of Robbery,[1] Robbery of a Motor Vehicle,[2] Theft by Unlawful Taking of Movable Property,[3] Receiving Stolen Property,[4] False Imprisonment,[5] Simple Assault,[6] Burglary,[7] and Conspiracy.[8] Additionally, Appellant pled *nolo contendere* to two counts of Attempted Kidnapping.[9] The following is a summary of the colloquy this Court conducted on the record in the course of Appellant's plea as set forth in our June 9, 2014, opinion:

The Court covered the six factors discussed in [Commonwealth v. Ingold, 823 A.2d 917, 920-21 (Pa. Super. Ct. 2003)] in detail with Appellant during the colloquy. Appellant acknowledged that he was presumed innocent and that he had a right to a trial by jury. N.T. 10/18/10, pp. 2-3. The Court advised the Appellant that he would have no obligation to testify at trial but had the option of testifying and presenting his case, and he would have the choice between a jury trial and a bench trial. Id., pp. 3-4. The Court further informed the Appellant that he would be forfeiting the right to raise pretrial issues, and that he would be limiting the issues he could raise on appeal. Id., p. 5. The Court also advised Appellant regarding the availability of a presentence investigation. Id., p. 7. Furthermore, the court advised Appellant of the manifest injustice standard for

---

[1] 18 Pa.C.S. § 3701(a)(1)(ii) and (iv).
[2] 18 Pa.C.S. § 3702.
[3] 18 Pa.C.S. § 3921.
[4] 18 Pa.C.S. § 3925.
[5] 18 Pa.C.S. § 2903.
[6] 18 Pa.C.S. § 2701.
[7] 18 Pa.C.S. § 3502.
[8] 18 Pa.C.S. § 903.
[9] 18 Pa.C.S. § 901; 18 Pa.C.S. 2901(a).

3

withdrawing a guilty plea. Id., p. 8. The Appellant confirmed that he was not forced to plead guilty and received no promises regarding the sentence. Id., pp. 5-6.

The Court informed Appellant that, in general, the charges on the information involved a robbery in the course of a theft of a 2007 Mercedes Benz in which he threatened Ms. Forte by intentionally placing her in fear of immediate serious bodily injury. N.T. 10/18/10, p. 9. Appellant acknowledged that he understood the charges. Id. The Court reviewed each charge on the information with Appellant, and informed him of the largest maximum and minimum to which he could be sentenced. Id., pp. 9-15. Appellant acknowledged that the largest aggregate maximum sentence he could receive was 80 years. Id., p. 14. In addition, the Court made clear to Appellant the counts on which it would not sentence him separately. Id., pp. 9-15. Appellant substantially agreed with the facts provided by the Commonwealth. Id., pp. 17-27.

Trial Ct. Op., June 9, 2014. In addition to the above oral colloquy, we separately discussed

Appellant's *nolo contendere* plea to two counts of Attempted Kidnapping, as demonstrated by

the following exchange:

MR. JAMES: Your Honor, the defendant's pleading no contest to Counts 3 or 4.

THE COURT: So you're pleading no contest to that offense; is that correct?

THE DEFENDANT: Yes.

THE COURT: You understand that by pleading no contest you will stand convicted of these crimes just as if you've gone to trial and been convicted by them. Do you understand that?

THE DEFENDANT: Yes.

N.T. 10/18/10, p. 10. Further, plea counsel conducted an additional colloquy with the Appellant

regarding his *nolo contendere* plea:

BY MR. ABAZA:

Q: First of all, Mr. Dillard, you heard the facts as recited by Mr. James, correct?

A: Yes.

Q: Do you substantially agree with those facts?

A: Yes.

4

Q: And the Commonwealth agreed to allow you to plead no contest to the robbery and the attempted kidnapping?

A: Yes.

Q: And we went over at great length that no contest means that you're not admitting to the charge but you're not contesting the evidence that the Commonwealth has. That is, the DNA evidence and the fingerprints and the testimony of the co-defendants?

A: Yes.

THE COURT: Are you satisfied that your lawyer is familiar with all of the evidence and the issues in the case?

THE DEFENDANT: Yes.

MR. JAMES: Just want to correct one thing, Your Honor. Commonwealth's not agreeing to the no contest. Commonwealth has no legal basis to object to no contest.

MR. ABAZA: Thank you for the correction.

N.T. 10/18/10, pp. 32-33. Finally, in a third exchange with the District Attorney, Appellant again confirmed his knowing and voluntary *nolo contendere* plea:

BY MR. JAMES:

Q: Mr. Dillard, you heard the facts as I read them into the record?

A: Yes.

Q: And you substantially agree with the facts as I read them into the record today?

A: Yes.

Q: And you agree you are guilty of robbery, burglary. You're pleading no contest to attempted kidnapping and that you agree that you are guilty, in fact, of conspiracy to commit the robbery of Claire Forte's vehicle?

A: Yes.

N.T. 10/18/10, pp. 39-40. On that same date, we sentenced Appellant to an aggregated 16 to 32 years' confinement.

5

Appellant did not file post sentence motions or a direct appeal. On September 6, 2011, Appellant filed his first PCRA petition, which raised issues of ineffective assistance for plea counsel's failure to preserve Appellant's post sentence motion and direct appellate rights. After a hearing, we granted Appellant's petition, in part, and ordered that his post-sentence motion rights and direct appeal rights be reinstated *nunc pro tunc*. On July 30, 2013, Appellant filed a Motion for Reconsideration of Sentence. On August 2, 2013, Appellant filed a supplemental post-sentence motion. Following a hearing on December 18, 2013, this Court denied Appellant's post-sentence motions. Appellant filed a timely Notice of Appeal to the Superior Court on January 17, 2014. On February 19, 2014, Appellant filed a Statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), which raised additional ineffective assistance claims. On March 31, 2015, the Superior Court affirmed Appellant's sentence and held that his ineffective assistance claims were not ripe for direct appellate review pursuant to Commonwealth v. Holmes, 79 A.3d 562 (Pa. 2013). See Commonwealth v. Dillard, No. 202 EDA 2014 (Pa. Super Ct. 2015). The Superior Court dismissed his ineffective assistance claims without prejudice to pursue them on collateral review. Id.

On March 7, 2016, Appellant filed his second PCRA petition. This Court appointed counsel, and Appellant subsequently filed an Amended PCRA petition on August 10, 2017. In his Amended Petition, Appellant raised ineffective assistance issues related to plea counsel's failure to investigate certain exculpatory evidence, and plea counsel's failure to object or otherwise appeal this Court's *nolo contendere* colloquy. On October 24, 2017, this Court held a hearing, and Appellant withdrew all claims on the record except those associated with this Court's *nolo contendere* colloquy. This Court ordered the parties to submit letter briefs on the *nolo contendere* colloquy claims and took the matter under advisement. On November 30, 2017,

6

after review of the parties' submissions, we denied and dismissed Appellant's Amended Petition. On December 15, 2017, Appellant filed a timely Notice of Appeal to the Superior Court.

## III. MATTERS COMPLAINED OF ON APPEAL

On January 11, 2018, this Court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) directing Appellant to file a Concise Statement of Matters Complained of on Appeal. On January 31, 2018, Appellant filed such a statement, which raised the following issues, *verbatim*:

1. Plea counsel was ineffective for failing to object to the inadequate colloquy given by the Court as the basis for the entry of the nolo contendere plea. The colloquy on the nolo contendere did not fully explain to the Defendant what it meant to enter a plea of nolo contendere and the judge only stated that "you understand that by pleading no contest you will stand convicted of these crimes just as if you have gone to trial and have been convicted by them, do you understand that?" There is no further colloquy on effects of the nolo plea and what it meant as far as an admission of guilt.

2. Plea counsel was ineffective for failing to file an appeal on the inadequate colloquy for the nolo contendere plea to the kidnapping charges.

3. First PCRA counsel was ineffective for not raising the inadequate nolo contendere plea colloquy during the initial PCRA petition.

## IV. ANALYSIS

Appellant argues that plea counsel was ineffective for failing to object to this Court's colloquy regarding his *nolo contendere* plea. Appellant further argues that plea counsel was ineffective for failing to raise the issue of the allegedly inadequate colloquy on direct appeal, and that Appellant's initial PCRA counsel was ineffective for failing to raise the same issue in the first PCRA petition. We find that this Court's colloquy was adequate, that Appellant fully understood the nature and consequences of pleading *nolo contendere*, and that Appellant did so knowingly, voluntarily and intelligently. As a result, neither plea counsel nor initial PCRA counsel was ineffective for failing to challenge or otherwise appeal this Court's *nolo contendere* colloquy.

7

A claim that plea counsel's ineffectiveness caused an involuntary plea must be examined under the PCRA's ineffective assistance provision rather than the unlawfully induced plea provision. Commonwealth v. Hickman, 799 A.2d 136 (Pa. Super. Ct. 2002). The Pennsylvania Supreme Court in Commonwealth v. Pierce established a three-part test for ineffective assistance claims: (1) the claim must have arguable merit; (2) counsel must have lacked any reasonable basis for his/her action or omission; and (3) the defendant must have been prejudiced by counsel's conduct. 527 A.2d 973, 976-77 (Pa. 1987). The test does not employ a hindsight evaluation of the record and does not consider whether other alternative courses of action were more reasonable. Commonwealth v. McNeil, 487 A.2d 802, 805 (Pa. 1985) (citations omitted). Where trial counsel's decisions had a reasonable basis, the balance tips in favor of finding effective assistance. Id. at 805-06.

A defendant must prove that counsel's ineffectiveness caused him to enter the plea, and that the resulting plea "question[s] the reliability of the manner in which [Petitioner's] guilt was determined." Commonwealth v. Lutz, 424 A.2d 1302 (Pa. 1981); Commonwealth v. Laszczynski, 715 A.2d 1185, 1187 (Pa. Super. Ct. 1998). Ineffective assistance may rise to the level of unlawful inducement if a defendant establishes a "causal nexus between counsel's ineffectiveness and the allegedly invalid plea." Commonwealth v. Flood, 627 A.2d 1193, 1199 (Pa. Super. Ct. 1993). Counsel's failure to object to an inadequate guilty plea may constitute a "causal nexus" under certain circumstances. Commonwealth v. Jones, 640 A.2d 1330, 1335 (Pa. Super. Ct. 1994). In Jones, the Pennsylvania Superior Court held that plea counsel was ineffective, and the defendant's plea was involuntary, where the trial court failed to apprise the defendant of the possibility that his sentences could be imposed consecutively, and where plea

8

counsel failed to object to the inadequate colloquy. Id. (citing Commonwealth v. Persinger, 615 A.2d 1305, 1308 (Pa. 1992)).

A valid plea must be knowingly, voluntarily, and intelligently entered. Commonwealth v. Pollard, 832 A.2d 517, 522 (Pa. Super. Ct. 2003) (citation omitted). "In terms of its effect upon a case, a plea of a *nolo contendere* is treated the same as a guilty plea." Commonwealth v. Lewis, 791, A.2d 1227, 1231 (Pa. Super Ct. 2002) (citations omitted). For a plea to be valid, a trial court must, at a minimum, conduct an on-the-record colloquy that includes the following inquiries:

> (1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?
>
> (2) Is there a factual basis for the plea?
>
> (3) Does the defendant understand that he or she has the right to trial by jury?
>
> (4) Does the defendant understand that he or she is presumed innocent until found guilty?
>
> (5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
>
> (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Ingold, 823 A.2d at 920-21; Pa.R.Crim.P. 590. The Court determines whether the plea was voluntary, knowing, and intelligent based on an examination of the totality of the circumstances. Commonwealth v. Broadwater, 479 A.2d 526, 532 (Pa. 1984). Even an omission or defect in a colloquy will not render a guilty or *nolo contendere* plea invalid if the "circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." Commonwealth v. Fluharty, 632 A.2d 312, 315 (Pa. Super. Ct. 1993).

9

To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to "manifest injustice." Commonwealth v. Carpenter, 725 A.2d 154, 164 (Pa. 1999). "A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently." Ingold, 823 A.2d at 920.

Here, we note initially that Appellant does not claim that the entirety of this Court's colloquy, or at least the portion regarding Appellant's entrance of guilty pleas, was inadequate; nor does Appellant claim that the entirety of his plea, or his guilty plea alone, was unknowing or involuntary. We also note that Appellant neither claims his innocence of any of the charges nor asserts any other prejudice amounting to manifest injustice that would allow him to withdraw his *nolo contendere* plea. Rather, Appellant only argues that this Court did not adequately explain the nature and consequences of his *nolo contendere* plea to two counts of Attempted Kidnapping. Consequently, Appellant essentially argues that his *nolo contendere* plea was unlawfully induced because plea counsel was ineffective for failing to object to this Court's allegedly defective colloquy, and that plea counsel's error was the "causal nexus" for the allegedly invalid plea. Nevertheless, under a totality of the circumstances, Appellant was well aware of the nature and consequences of entering a *nolo contendere* plea, and did so knowingly, voluntarily and intelligently. To that end, plea counsel's actions could not have unlawfully induced an invalid *nolo contendere* plea, and prior counsel's failure to appeal this Court's colloquy did not constitute ineffective assistance of counsel.

In support of his argument that this Court's colloquy as to that plea was inadequate, Appellant relies on the Pennsylvania Supreme Court's ruling in Commonwealth v. Gunter, 771 A.2d 767 (Pa. 2001). See Letter Brief in Support of Petitioner's Amended Post Conviction Relief Act Petition. However, Appellant's reliance on Gunter is misplaced. In that case, the

10

Court found a defendant's *nolo contendere* plea involuntary and unknowing where the trial court administered *no oral colloquy*. Id. at 769. Instead, the defendant merely answered a written colloquy form that made no mention of a no contest plea, and contained numerous errors and altered answers that belied the reliability and validity of the defendant's plea. Id. at 770-71.

Here, unlike the trial court in Gunter, this Court administered a full and thorough colloquy that addressed all but the final Ingold requirement, as there was no plea agreement. N.T. 10/18/10, pp. 2, 3, 9-11, 17-27. Additionally, we conducted a separate colloquy that explained the nature and circumstances of a no contest plea. Id. at 10. In response to all questions posed to him, Appellant stated that he understood what was being explained to him, that he was not taking any medications, and that he was not otherwise under the influence of any drugs or alcohol. Id. at 6. Additionally, Appellant specifically affirmed that he understood this Court's explanation of the charges, the permissible ranges of sentence, and the various rights he would relinquish upon entering a plea. Id. at 2-5, 7-15. Appellant further affirmed that he substantially agreed with the Commonwealth's presentation of the factual basis for the plea. Id. at 17-27, 39-40. In response to three separate inquiries by this Court, Appellant repeatedly affirmed that he was satisfied with plea counsel's familiarity with his case. Id. at 6, 31, 32. Finally, Appellant also affirmed his understanding of the possibility that his sentences as to each count could be imposed consecutively. Id. at 14.

Specifically regarding the *nolo contendere* plea, Appellant affirmed that he fully understood the nature and consequences of a no contest plea in three separate exchanges with the Court, plea counsel, and the District Attorney. N.T. 10/18/10, pp. 10, 32-33, 39-40. Specifically, Appellant acknowledged that he and plea counsel discussed the meaning of a *nolo contendere* plea at "great length," and that he was satisfied with counsel's familiarity with the

11

issues in his case. Id. at 32. Appellant had ample opportunity throughout the proceedings to ask additional questions, contest the factual basis for the plea, or withdraw the plea entirely. Indeed, Appellant asked this Court for additional clarification regarding his right of allocution, as demonstrated by the following exchange:

> THE COURT: You exercise your right of allocution. That is, you wish to make a statement regarding post sentence?
>
> THE DEFENDANT: I don't understand the question.
>
> THE COURT: Do you want to say something before I impose sentence? This is your chance to say something you wish to say before I impose sentence.

Id. at 40. Further, when the District Attorney discussed Appellant's prior record, the Appellant specifically contested the Commonwealth's allegation that he was a gang member:

> THE COURT: I noticed that your client sort of responded in a negative way to the allegation that he was a gang member.
>
> MR. ABAZA: That's correct.
>
> THE COURT: Does he deny that?
>
> MR. ABAZA: Yes.
>
> THE COURT: Then I will disregard the comment.

Id. at 27, 30-31. The above exchanges indicate that Appellant was an active participant in the proceedings such that he could have asked additional questions, corrected erroneous statements, or moved to withdraw his plea if necessary. Consequently, Appellant had numerous opportunities to ask additional questions regarding the nature and consequences of a *nolo contendere* plea and correct any confusion that remained after this Court's initial colloquy.

Contrary to Appellant's assertions, this Court's succinct statement regarding the consequences of a *nolo contendere* plea cannot, standing alone, invalidate Appellant's plea. Appellant has presented no legal authority, nor is this Court aware of any, to support the claim

12

that this Court's statement regarding that plea was either incorrect or insufficient. Rather, the totality of the circumstances surrounding the plea, which includes this Court's *nolo contendere* colloquy, our complete and thorough guilty plea colloquy, and the numerous exchanges described above, reveal that Appellant "had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." Fluharty, 632 A.2d at 315. Accordingly, this Court conducted an adequate colloquy that apprised Appellant of the nature and consequences of entering a *nolo contendere* plea, and we properly accepted that plea as knowingly and intelligently entered. Thus, because this Court's colloquy was more than adequate, Appellant's ineffectiveness claims must fail, as neither plea counsel nor initial PCRA counsel was ineffective for failing to challenge or otherwise appeal our colloquy. As a result, Appellant cannot establish a causal nexus between counsel's actions and his resulting *nolo contendere* plea such that it rises to the level of unlawful inducement.

## V.    CONCLUSION

For the foregoing reasons, we respectfully submit that Appellant's argument is without merit.

DATE: 2/9/18

BY THE COURT:

REA B. BOYLAN, J.

13