**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAMSEY WOOD | |
| Appellant | No. 662 WDA 2015 |

Appeal from the PCRA Order April 16, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0011834-2002
CP-02-CR-0012068-2002

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J. **FILED APRIL 26, 2016**

Appellant, Ramsey Wood, appeals from the order entered April 16, 2015, in the Court of Common Pleas of Allegheny County, which denied Wood's Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, petition. We affirm.

A panel of this Court summarized the facts behind Wood's convictions as follows.

> On July 24, 2002 Wayne Staples, the victim, and Ramsey Wood were patrons of Reese's Supper Club, located on Fifth Street near Viola in Duquesne, Pennsylvania.  Locust Alley runs behind the club. According to witnesses an argument or disagreement broke out between the two. Staples and his cousin, James Butler, left the club. Wood exited the club shortly thereafter, complaining someone had called his girlfriend a bitch.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Butler saw Wood pull a silver automatic handgun from his waistband, aim it at Staples' head and pull the trigger. This occurred on Locust Alley. This apparently triggered a gun battle, as the police recovered numerous shell casings and bullet fragments (from three separate 9 mm and one .45 caliber weapon).[FN1] Staples suffered a single, through and through gunshot wound to his head. The bullet entered in the area of his left temple and exited his body through [the] right side of his neck. The bullet fractured Staples' top two cervical vertebrae before exiting. Staples died five days after being shot. The murder weapon was never located.

In his defense, Wood presented several witnesses who claimed to have seen him at a convenience store in the Hazelwood section, some miles away from the murder scene, at the time of the shooting. These witnesses were members of a local church who testified they were bringing between 15-25 children, ages 3 and up, who were members of the church drum corps, to the store for treats. They testified such trips were a regular occurrence. On the night in question, they testified they saw Wood at the convenience store at about 10:30 p.m. and Wood remained at the store for 15 to 20 minutes. On rebuttal, the Commonwealth presented the testimony of the store owner who stated she could remember no such regular visits by the witnesses and a large number of children.

[FN1] The other shooters were not identified.

**Commonwealth v. Wood**, 897 A.2d 524, at *2-3 (Pa. Super., filed Jan. 31, 2006) (unpublished mem.), **appeal denied**, 906 A.2d 1196 (Pa. 2006). A jury convicted Wood of first degree murder and carrying a firearm without a license. On February 18, 2004, the court sentenced Wood to life imprisonment. This Court affirmed Wood's judgment of sentence on appeal, and the Pennsylvania Supreme Court denied allocatur. **See Wood**, **supra**.

On October 13, 2006, Wood filed a pro se PCRA petition. Counsel was appointed, and subsequently requested and was granted permission to withdraw. New counsel was then appointed and an amended PCRA petition

- 2 -

was filed on July 3, 2013. The PCRA court conducted an evidentiary hearing on Wood's amended petition on August 12 and 15, 2014. The PCRA court ultimately denied Wood's petition. This timely appeal followed.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, **Edmiston v. Pennsylvania**, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012) (citation omitted). "[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

We proceed to address the merits of Wood's claim that he is entitled to a new trial based upon newly-discovered evidence. Wood claims that the recently discovered testimony of eyewitnesses Antoine Strothers and Latel Smith identifying Robert Felder as the individual who shot the victim constitutes exculpatory evidence warranting a new trial. This newly discovered testimony recants their testimony offered at trial.

> To obtain relief based upon newly-discovered evidence under the PCRA, a petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained

at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

*Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004) (citation omitted). The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. *See Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008).

"We acknowledge that, as a general matter, recantation evidence is notoriously unreliable, particularly where the witness claims to have committed perjury." *D'Amato*, *supra*, at 825 (internal quotes and citation omitted). *See also Commonwealth v. McNeil*, 487 A.2d 802, 807 n.4 (Pa. 1985) (opining that recantation evidence has often been recognized as one of the least reliable forms of after-discovered evidence). "[A]n appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion." *Commonwealth v. Hammond*, 953 A.2d 544, 561 (Pa. Super. 2008) (citation omitted).

Wood attached to his amended PCRA petition affidavits of both Antoine Strothers and Latel Smith, in which each attested that they observed Robert Felder, now deceased, shoot the victim on the night of July 24, 2002. This testimony differed markedly from that which the eyewitnesses offered at trial for the defense.

At trial, Strothers testified that he was waiting in a car outside of the nightclub on July 24, 2002 when he heard gunshots that hit his car window. *See* N.T., Jury Trial, Nov. 19-25, 2003, at 568-75. Both Strothers and a passenger were transported to the hospital, where Strothers informed the police that he had not seen who fired the gun. *See id*. at 578. He further stated that he had nothing to hide and that he was not afraid. *See id*. Smith testified at trial that although he observed Wood at the nightclub on the night of the shooting, he witnessed an unknown individual, not Wood, shoot the victim. *See id*. at 658, 668-74.

Both eyewitnesses effectively recanted their earlier trial testimony several years after the event in question when they identified Robert Felder as the shooter. A prerequisite to relief based upon a claim of recantation evidence is that "the evidence upon which the relief is sought must be credible to the trial court." ***Commonwealth v. Loner***, 836 A.2d 125, 135 (Pa. Super. 2003) (citation omitted). Here, the PCRA judge was the fact-finder whose duty it was to determine the credibility of the victim's recantation testimony. Not surprisingly, in its Rule 1925(a) opinion, the PCRA court explicitly found Strothers's and Smith's recantation evidence to be "inherently unreliable." PCRA Court Opinion, 8/27/15 at 2. We find no abuse of discretion. Consequently, we agree with the PCRA court that the recantation testimony does not entitle Wood to a new trial.

Wood next asserts that trial counsel was ineffective by failing to call his mother, Rhonda Wood, and grandmother, Dolores Powell, as witnesses in support of his alibi defense. Wood claims that his mother and grandmother would have placed him at home at the time the shooting occurred. Wood's claim does not warrant relief.

"The law assumes that counsel was effective, and the burden is on appellant to prove otherwise." **Commonwealth v. McSloy**, 751 A.2d 666, 228 (Pa. Super. 2000). "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." **Commonwealth v. Stewart**, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*), **appeal denied**, 93 A.3d 463 (Pa. 2014) (citation omitted).

"Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests." **Commonwealth v. Spotz**, 84 A.2d 294, 311 (Pa. 2014) (citation omitted). "Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Id**. at 311-12 (citation and quotes omitted). A failure to

satisfy any prong of the test will require rejection of the claim. ***See id***. at 311.

> [I]n the particular context of the alleged failure to call witnesses, counsel will not be deemed ineffective unless the PCRA petitioner demonstrates: (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.

***Commonwealth v. Miner***, 44 A.3d 684, 687 (Pa. Super. 2012) (citation omitted).

In rejecting Wood's claim, the PCRA court determined that the testimony of the proposed alibi witnesses was merely cumulative and would only have corroborated the testimony of other witnesses already presented at trial. ***See*** PCRA Court Opinion, 8/27/15 at 3. While we do not necessarily agree with the court's conclusion that the alibi testimony was merely cumulative, as the testimony would have placed Wood at home closer to the time of the shooting than the testimony offered by other alibi witnesses called at trial, we agree that the absence of the testimony did not deny Wood a fair trial.

The Commonwealth established at trial that the shooting occurred at approximately 11:45 p.m. ***See*** N.T., Jury Trial, Nov. 19-25, 2003, at 50, 200-01. As previously noted, defense witnesses placed Wood at a convenience store for approximately twenty minutes that evening beginning at approximately 10:20 p.m. At the PCRA evidentiary hearing, Wood's

mother testified that Wood left for the convenience store around 10-10:30 p.m., returned at approximately 11:00 p.m. and stayed home for the rest of the evening. *See* N.T., PCRA Hearing, 8/12/14, at 33-36. Wood's grandmother testified similarly that Wood left for the convenience store around 10:30 or 11 p.m., returned in approximately one half hour, and then remained home. *See id*. at 47-50.

Trial counsel admitted at the PCRA hearing that he was aware of this testimony and that both witnesses were available, and indeed were sequestered, for trial. *See id*. at 9-12. However, counsel explained that there were other witnesses who testified that they had seen Wood at the convenience store around the time of the shooting and that he believed that testimony would have been sufficient to raise a doubt as to Wood's presence at the scene of the shooting. *See id*. at 15. Although counsel could not specifically recall his thought process with respect to this case, he additionally posited that he would not have called these particular witnesses because, in his experience, jurors may see a bias when a mother and grandmother or close family relations testify. *See id*. at 15-16.

Counsel's strategy, in declining to put forth the testimony of witnesses whom the jury may perceive to be biased, is eminently reasonable. We are further satisfied that counsel's decision to not call Wood's mother and grandmother as alibi witnesses did not deny Wood a fair trial as other witnesses who testified at trial placed Wood at the convenience store around

the time of the murder.[1] Accordingly, we do not find that counsel was ineffective on this basis.

Wood lastly claims that trial counsel was ineffective for providing inaccurate advice regarding a plea agreement offered by the Commonwealth. Wood contends that trial counsel erroneously advised him that even if he rejected the plea agreement and was ultimately convicted at trial, he would not receive any more time than contemplated in the plea agreement to third degree murder. *See* Appellant's Brief at 47.

At the PCRA evidentiary hearing, trial counsel testified that although he did not recall whether a plea offer had been made, he remembers that he discussed with Wood the penalties he was facing, including that the penalty for first degree murder was a life sentence. *See* N.T., PCRA Hearing, 8/12/14, at 102-03. The trial court explicitly credited counsel's testimony. PCRA Court Opinion, 8/27/15 at 3. "The PCRA court's credibility determinations are binding on this Court when they are supported by the record." *Commonwealth v. Hutchinson*, 25 A.3d 277, 284 (Pa. 2011) (citation omitted). We therefore agree that Wood's remaining ineffective assistance of counsel claim is without merit.

Based on the foregoing, we find no abuse of discretion in the PCRA court's order dismissing Wood's PCRA petition.

_____

[1] Two eyewitnesses identified Wood as the shooter at trial.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2016</u>