J-S41031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL RILEY | : | |
| | : | |
| Appellant | : | No. 3 EDA 2024 |

Appeal from the PCRA Order Entered November 30, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006088-2012

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 11, 2025**

Daniel Riley ("Riley") appeals from the order dismissing, after a hearing, his first, counseled petition for relief pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

We take the underlying facts and procedural history in this matter from this Court's opinion on direct appeal.

> On September 29, 2011, into the early morning hours of September 30, 2011, the victim met with friends at J's Big Shot Lounge, a bar at the corner of Stenton Avenue and Narragansett Street in Philadelphia. The victim had recently purchased a Buick LeSabre, which he parked on the street near the bar.
>
> While the victim was in the bar, [Riley] was on the street outside that bar with Thomas Robinson and [others]. [Riley] stated that he wanted to rob the victim who was known by the group to sell drugs in that area. [Robinson and the others] agreed to rob the victim. While the victim was still inside the bar, [Riley] left the scene [to] obtain a firearm. . . . [Riley] returned with a

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

gun . . . [and stood with Robinson] near the bar awaiting the victim's exit, while [the others] stayed down the street.

The victim stayed in the bar until approximately 3:15 a.m. . . . After leaving the bar, the victim went to his car . . . where he was confronted by [Riley] and Robinson. [Riley] ordered the victim to "give it up" while pointing his gun at the victim's chest. The victim told [Riley] "you goin' have to shoot me," and pushed the gun away. [Riley] then fired multiple shots at the victim as the victim began to flee back towards the bar. [Riley] and Robinson then fled down Narragansett Street, away from the bar. Surveillance cameras captured the entire incident on video.

The victim was shot in the left side and leg. The victim . . . did not regain consciousness while in the hospital and eventually died on October 8, 2011.

Police [arrested Riley in mid-March 2012]. [Riley] attempted to flee but was restrained by police. Initially, [Riley] gave an alias at the time of his arrest. However, upon seeing his name and picture displayed on the computer in the police car, [Riley] stated, "You guys got me. I'm going away for a long time." When asked why [Riley] thought he was going away for a long time, [Riley] replied, "I killed someone."

*Commonwealth v. Riley*, 145 A.3d 793 (Pa. Super. 2016) (unpublished memorandum at *1) (internal citations and some brackets omitted).

A jury convicted Riley of first-degree murder, robbery, conspiracy, and two weapons offenses. The trial court sentenced Riley to life in prison without the possibility of parole. On appeal, this Court affirmed the judgment of sentence. *See id*. at *3. The Pennsylvania Supreme Court subsequently denied leave to appeal.

In March 2017, Riley filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who withdrew after Riley retained private counsel, Attorney Todd Mosser, Esquire ("Attorney Mosser"). In July 2018, Attorney

Mosser filed an amended PCRA petition, alleging, in pertinent part, trial counsel, Attorney Robert Dixon ("Attorney Dixon") was ineffective for failing to investigate and call alibi witnesses. *See* PCRA Petition, 7/12/18, at 6-7. After obtaining leave of court, in May 2019, Attorney Mosser filed a second amended PCRA petition which modified the attorney certification regarding witnesses. *See* Amended PCRA Petition, 5/24/19, at 7-8, Attorney Certification.

In June 2019, the PCRA court issued notice of its intent to dismiss the petition without a hearing. *See* Pa.R.Crim.P. 907. Riley filed a response which included an amended witness certification. The PCRA court scheduled an evidentiary hearing, which was delayed because of the COVID-19 pandemic. Later, at a pre-hearing conference, Riley advised the court his alibi witness was no longer willing to testify. Consequently, the PCRA court canceled the scheduled evidentiary hearing and dismissed Riley's PCRA petition.

Riley filed a timely appeal and retained current counsel, Attorney Teri B. Himebaugh ("Attorney Himebaugh") to represent him on appeal. For the first time on appeal, Attorney Himebaugh raised a claim Attorney Mosser was ineffective for failing to obtain statements from various proposed alibi witnesses. In October 2021, this Court affirmed the dismissal of Riley's PCRA petition. *See Commonwealth v. Riley*, 266 A.3d 642 (Pa. Super. 2021) (unpublished memorandum, at *1).

Riley filed a petition for allowance of appeal with the Pennsylvania Supreme Court. In April 2022, the Court granted allowance of appeal and remanded the matter to this Court for reconsideration in light of its decision in **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021). **See Commonwealth v. Riley**, 277 A.3d 123 (Pa. 2022).

In September 2022, this Court vacated the denial of PCRA relief and remanded the matter for the filing of an amended PCRA petition and an evidentiary hearing with respect to Riley's claims of ineffective assistance of trial and PCRA counsel. **See Commonwealth v. Riley**, 285 A.3d 901 (Pa. Super. 2022) (unpublished memorandum at *8).

In compliance with this Court's order, Riley filed an amended PCRA petition and the PCRA court held an evidentiary hearing in July 2023. At the hearing, Attorney Dixon, Attorney Mosser, Attorney Mosser's investigator, Sean Hawke ("Hawke"), Riley, and Riley's "uncle," Gregory Wroten ("Wroten")[2] testified. Of pertinence to this appeal, the PCRA court summarized the testimony of Wroten as follows.

> [] Wroten testified that at the time of the murder, in the early morning of September 30, 2011, [Riley] was at Wroten's home on Woodstock Street in Philadelphia. Specifically, [] Wroten testified that at around 5 or 6 p.m. on the evening on September 29, 2011, [Riley] came to his room in the Woodstock Street home and had a conversation with him about bringing over a girlfriend later that night. According to [] Wroten, [Riley] asked if he could borrow []

---

[2] Wroten testified he and Riley were cousins but because Wroten and Riley's mother were raised in the same household, he considered Riley his nephew. **See** N.T., 7/7/23, at 76.

Wroten's room when his girlfriend came over, to which [] Wroten agreed. [] Wroten testified that [Riley] left the house shortly after that conversation.

[] Wroten further testified that he left his home around 8 p.m. to go out partying, where he had about six beers and a dime bag of either marijuana or cocaine, and returned home around 2 a.m. He stated that he specifically remembered he got home at 1:55 a.m. on the night of the murder, because he checked both his watch and the clock on his VCR. [] Wroten further testified that, shortly after he arrived home, he went upstairs to his room to find a woman in his bed. [] Wroten stated that he [sic] since he had
women over often, and he figured [Riley] had already come and gone with his girlfriend, he assumed that the woman in his bed was someone he knew, and he began "messing around" with her.

[] Wroten testified that when he realized the woman was the "wrong person," he jumped up out of bed and the woman began loudly cursing at him. Following this incident, [] Wroten testified he immediately left the room to go downstairs when he heard people running up the steps from the basement of the house. According to [] Wroten, at approximately 2:15 a.m., while going down the steps[,] [] Wroten saw it was [Riley] and David McCoy [("McCoy")], [Riley's] brother, whom he had heard inside the house.

[] Wroten stated that he went out and sat on the front porch of the home after coming down the stairs, and [Riley] quickly came back down to confront him for scaring his girlfriend. [] Wroten testified that he and [Riley] got into a "shoving match" on the porch, and [] McCoy intervened. Following the argument, Wroten stated that [Riley] went back inside. [] Wroten testified he spent the rest of the night on the front porch and was up until around 4 a.m. He stated that he knew [Riley] did not leave the house after their argument on the porch, because he would have noticed anyone leaving [via] of the front door and the back door was broken and had been previously nailed shut. [] Wroten further testified that he has struggled with drug and alcohol addiction for his entire life, and that during September [] 2011, he was using cocaine, marijuana, and alcohol recreationally. He also stated that, despite this murder occurring 11 years prior to him signing an affidavit, and despite [the fact] that he had been

drinking and using drugs the night of the murder, he remembered the specific timeline of events.

PCRA Court Opinion, 3/4/24, at 10-12 (footnote and internal citations omitted).

Riley's testimony at the PCRA hearing largely corroborated Wroten's testimony. *See* N.T., 7/7/23, at 103-23. Riley testified he had made plans to use Wroten's room to have a sexual encounter with a woman. *See id*. at 107. At approximately 12:50 a.m., the woman had arrived and was in the process of taking off her clothes when McCoy knocked on the door and invited Riley to go to the basement to smoke. *See id*. at 107-08. Riley then left the woman and went to the basement to smoke and "play a game," which is why the woman was alone in the room when Wroten entered and assaulted her. *Id*. at 108-09. Riley admitted his testimony at the PCRA hearing contradicted his trial testimony that he was unable to recall what he was doing on the night of the murder. *See id*. at 111-13.

In November 2023 following hearing, the PCRA court denied relief and dismissed Riley's PCRA petition. This timely appeal followed.[3]

On appeal, Riley raises three issues for our review.[4]

I.     Did the PCRA [c]ourt err in finding [Wroten] incredible?

II.    Did the PCRA [c]ourt err in finding that [Attorney Dixon] was not ineffective for failing to investigate and call [Wroten]?

---

[3] Riley and the PCRA court complied with Pa.R.A.P. 1925.

[4] We have reordered the issues in Riley's brief.

> III. Did the PCRA [c]ourt err in finding that [Attorney Mosser] was not ineffective for failing to investigate and call [Wroten]?

Riley's Brief at 7.

The principles that guide our review are well settled. To be eligible for relief pursuant to the PCRA, an appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An allegation of error is waived "if the petitioner could have raised it but failed to do so before trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). Our standard of review for an order denying PCRA relief is as follows:

> This Court's standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **_Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record._**

**_Commonwealth v. Carter_**, 21 A.3d 680, 682 (Pa. Super. 2011) (citations and quotation marks omitted, emphasis added).

In his three related claims, Riley contends he received ineffective assistance of trial and PCRA counsel. **_See_** Riley's Brief, at 16-38.

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following

three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. With regard to the second prong (reasonable basis), we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative offered a potential for success substantially greater than the course actually pursued. Our review of counsel's performance must be highly deferential. To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, [a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first.

*Commonwealth v. Brown*, 196 A.3d 130, 150-151 (Pa. 2018) (citations, internal citations, and quotation marks omitted). Further, to prove counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Id*. at 167 (citation omitted).

Riley argues the PCRA court erred in denying his ineffectiveness claim on prejudice grounds because Wroten's testimony was incredible. *See* Riley's

Brief, at 44-50. Riley acknowledges "a PCRA court's credibility determinations should be given great deference[,]" but maintains nevertheless the PCRA court's findings are not supported by the record. *See id*. 47.

In announcing its decision at the November 2023 hearing, the PCRA court explained Riley's own trial testimony contradicted his PCRA hearing testimony and his proposed alibi defense. *See* N.T., 11/30/23, at 10-11. The court continued:

> First, I found Wroten to be an utterly incredible witness. [The court does] not believe that Wroten[,] [who] was a drug addict and an alcoholic at the time of the murder . . . could recall all of the details that he testified to regarding the events on the night in question and their timing.
>
> Second, his story, if true, would certainly be something that [Riley] would have remembered. Wroten's fight with [Riley] after he allegedly performed oral sex on [Riley's] girlfriend, mistaking her, he claimed, for someone else, was not likely to be forgotten by [Riley]. And as stated above, [Riley] testified at this trial under oath that he had no recollection of his whereabouts. . . . [H]e cannot premise this claim now on the contention that he lied at his trial.
>
> Third, I believe that the evidence [at] [Riley's] trial -- the evidence of [Riley's] guilt at trial was compelling and that Wroten telling his story of the activities that night would not likely change the jury's verdict [and] because . . . [of this Riley] did not prove that [Attorney Dixon] was ineffective for failing to call Wroten as an alibi witness. It necessarily follows that [Attorney] Mosser could not have been ineffective for failing to investigate and present Wroten in support of [a] meritless claim of trial counsel['s] ineffectiveness.

*Id*. at 11-12 (line numbers omitted).

Our Supreme Court has recently reiterated:

> when reviewing a credibility determination by the PCRA court, this Court is bound by the [PCRA] court's credibility determinations, unless those determinations are not supported by the record. The credibility determinations are to be provided great deference, and indeed, they are one of the primary reasons PCRA hearings are held in the first place. Moreover, we must conduct our review in the light most favorable to the prevailing party, in this instance, the Commonwealth. Given that the PCRA court, as fact-finder, has the opportunity to listen to witnesses, to observe their demeanor and attitude, we have stated that there is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations.

*Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023) (internal citations, quotation marks, and brackets omitted). We have no basis to overturn the PCRA court's credibility findings which are amply supported by the record and the relevant law. *See Commonwealth v. Kapellusch*, 323 A.3d 837, 850 (Pa. Super. 2024) (Relying on *Rizor* and concluding there was no basis to overturn the PCRA court's credibility determinations); *see also Commonwealth v. McNeil*, 487 A.2d 802, 807-08 (Pa. 1985) (stating that "[h]aving freely and deliberately chosen to offer testimony which he now asserts was false, [defendant] stands before this Court and attempts to reap a windfall new trial on account of his own perjury. The criminal justice system cannot and will not tolerate such an obvious and flagrant affront to the integrity of the truth determining process thinly disguised under the rubric of 'ineffective assistance.'"); *Commonwealth v. Felix*, 303 A.3d 816, 822 (Pa. Super. 2023) (holding a defendant cannot obtain PCRA relief by claiming he lied under oath in prior court proceedings). Further, because the PCRA court

J-S41031-24

concluded Riley could not demonstrate prejudice, we need not address Riley's contentions that Attorneys Dixon and Mosser were ineffective for failing to investigate and call Wroten as a witness.[5]

Accordingly, for the reasons discussed above, we affirm the denial of Riley's PCRA petition.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2025

---

[5] If we were to address Riley's claims, we would affirm for the reasons stated in the PCRA court's bench ruling and Rule 1925 opinion. **See** N.T., 11/30/23, at 10-13; PCRA Court Opinion, 3/4/24, at 15-23.

- 11 -